BOLLENBACHER *v.* HARRIS, MAYOR, ET AL.

[No. 24,821.   Filed June 25, 1925.   Rehearing denied November 4, 1925.]

1. MUNICIPAL CORPORATIONS.—*Legalizing act of 1925 held to validate bonds issued by city of Bloomington to purchase stock in water company as against irregularities in proceedings.*— The act of 1925 (Acts 1925 p. 133) legalizing the contract between the city of Bloomington and the Bloomington Water Company for the purchase by the city of all the common stock

of the company and legalizing the bonds issued therefor, made such bonds valid and legal, no vested rights having intervened, and injunction to prevent their sale and issue because of irregularities in the proceedings will not lie.  p. 661.

2.  MUNICIPAL CORPORATIONS.—*Purchase by city of practically all common stock of water company and issuance of bonds to pay therefor held not violation of constitutional limitation on municipal indebtedness.*—The purchase by a city of practically all the common stock of a water company organized to furnish water to the city and its inhabitants, and the issuance of bonds amounting to $125,000 to provide funds to pay therefor, would not be violating the constitutional provision limiting municipal indebtedness (Art. 13, §1, Constitution, §227 Burns 1926, §220 Burns 1914), where the city was authorized to incur additional indebtedness of $225,000, and was not otherwise pledging or mortgaging any of its property or any of its income or revenues (*Voss* v. *Waterloo Water Company*, 163 Ind. 69 and *Scott* v. *City of LaPorte*, 162 Ind. 34, distinguished).  p. 662.

3.  PARTIES.—*City and water company held properly admitted as defendants in suit to enjoin mayor from issuing bonds to raise funds to pay for stock in water company.*—In a suit by a taxpayer against the mayor of a city to enjoin him from executing and issuing bonds to provide funds to pay for stock in a water company organized to furnish the city and its inhabitants with water, the city and water company were properly admitted as parties defendant under §279 Burns 1926, §273 Burns 1914, §272 R. S. 1881.  p. 665.

From Owen Circuit Court; *Cyrus E. Davis*, Special Judge.

Suit by William P. Bollenbacher against John G. Harris, mayor, and another, wherein the city of Bloomington and the Bloomington Water Company were admitted as parties defendant, and the city filed a cross-complaint.  From a judgment against plaintiff on the complaint and awarding the city a mandatory injunction on the cross-complaint, the plaintiff appeals. *Affirmed.*

*Owen S. Boling, Ralph E. Jones, Walker & Hollett, Shea & Hottel* and *Walter E. Hottel,* for appellant.

*Matson, Carter, Ross & McCord, Mier & Corr* and *J. F. Regester,* for appellees.

EWBANK, J.—Appellant, suing as a taxpayer, brought this action against appellee Harris, as mayor of the city of Bloomington, and another as city clerk, to enjoin them from executing and delivering municipal bonds of said city to the amount of $125,000, pursuant to the terms of a city ordinance purporting to order the issue of bonds in that amount to provide funds with which to pay for common stock of the Bloomington Water Company for which the city had subscribed. Stating certain alleged reasons why the issue of such bonds would be illegal, the complaint averred that the defendants were threatening to sign the bonds and deliver them to a purchaser who had agreed to buy them at par, and that, unless enjoined, they would do so. The mayor having filed an answer of general denial, and the plaintiff (appellant) having dismissed as to the city clerk, the Bloomington Water Company and the city of Bloomington filed a petition to be admitted as parties and permitted to defend the action. This petition alleged that the mayor was and at all times had been opposed to the issue of bonds for the purpose stated, and opposed to the purchase by the city of stock in the water company, and, as such mayor, was not making and would not make a good faith defense; that the city had negotiated a sale of the bonds for $125,000 and had contracted with the water company to purchase its common stock to the amount of $125,000, by way of aiding in the construction of a dam and water plant to furnish the city with an additional supply of water, of which it was alleged to be in need; that the water company had let a contract for the construction of such additional water plant; and that a judgment forbidding the execution and sale of the bonds of the city would seriously affect the general public in said city. Over an objection and exception by plaintiff, the water company and the city were both admitted as defendants and filed

answers of general denial to the complaint. The city of Bloomington also filed a cross-complaint stating facts by reason of which it was alleged to be the mayor's duty to join in the execution and delivery of the bonds in question, and asking that he be enjoined from further refusing to sign them. After having filed a plea in abatement to which a demurrer was sustained, the mayor filed his motion to strike out the cross-complaint, which motion was overruled, and he then filed a demurrer thereto, which was also overruled, an exception being reserved to each ruling. The plaintiff also filed a motion to strike out the cross-complaint, which was overruled and he excepted. The mayor filed an answer of general denial to the cross-complaint, and an affirmative answer setting up facts by reason of which the bonds were alleged to be illegal. Answers and replies of denial by the different parties to the several paragraphs of affirmative pleadings filed by their respective adversaries closed the issues, and, upon due request, the court made a special finding of facts, on which it stated conclusions of law to the effect that the plaintiff was not entitled to recover anything, and that the city was entitled to a mandatory injunction forbidding the mayor any longer to refuse to sign the bonds. The plaintiff and the mayor each excepted to each conclusion of law. Each of them then filed a motion for a *venire de novo*, but each motion was overruled, and an exception reserved. Each then moved for a new trial and reserved an exception when his motion was denied. Judgment was rendered in conformity with the conclusions of law. Plaintiff and the mayor have each challenged each of said rulings by an assignment of errors.

Many of the exceptions relied on, as presented by the briefs, were based on a contention that the common council and other officers of the city had proceeded irregularly in the matter of making the contract with the

water company, ordering the issue and sale of the bonds, and otherwise exercising the power conferred on the city by statutes, by reason of which irregularities the bonds were alleged to be void; and others were based on an alleged incapacity of the city, within the limits imposed by the Constitution of Indiana, to issue bonds in the amount and for the purpose that these bonds were ordered to be issued.

Since the taking of this appeal, the legislature has passed an act purporting to legalize the contract between the city and the water company, and the

1. bonds in question, and all the acts of the common council and other public officers that led to their issue and sale. Acts 1925 p. 133. And counsel admit that the bonds have been signed by the mayor who succeeded appellee Harris in that office, delivery being withheld until questions as to their validity shall have been determined. No vested rights having intervened, the legalizing act made the bonds valid and legal, unless because of some constitutional restriction upon the power of the legislature to authorize their issue in the first instance by the methods complained of as having been irregular. *Schneck* v. *City of Jeffersonville* (1898), 152 Ind. 204, 216, 217, 52 N. E. 212; *School Town of Windfall City* v. *Somerville* (1914), 181 Ind. 463, 477, 104 N. E. 859, Ann. Cas. 1916D 661; *Follett, Treas.,* v. *Sheldon* (1924), 195 Ind. 510, 144 N. E. 867, 877; *Johnson* v. *Board, etc.* (1886), 107 Ind. 15, 19, 8 N. E. 1.

Therefore, we need not further consider the alleged invalidity of the bonds by reason of any failure strictly to comply with the statutes then in force in ordering them issued and in issuing them.

There was evidence to the effect, and the court found, that the city of Bloomington was already indebted to the extent that it could not incur additional debts in ex-

cess of $225,000 without violating Art. 13, §1, of the Constitution of Indiana (§220 Burns 1914).

And while the proposed issue of bonds was only to be in the amount of $125,000, appellants insist that the purchase of all the common stock of the water company, except nine shares subscribed for and owned by the directors, as proposed, would convert the obligations of the company into debts of the city, and that those obligations exceeded the amount for which the city might lawfully become indebted. The evidence and the special finding both showed that the water company had not mortgaged or otherwise encumbered its property, nor issued any bonds, and was not proposing to do so, but that it planned to pay the entire cost of purchasing real estate and constructing its plant from the sale of its capital stock; that it had bound itself by contract to pay $270,000 for the construction of a dam and water mains, had paid $4,000 in purchasing real estate and $25,000 as the assessed value of lands taken by the power of eminent domain on which to construct a dam and reservoir, and had retained attorneys to whom, for services rendered and to be rendered, it would probably have to pay $12,000; that it had obtained an order from the Public Service Commission of Indiana authorizing it to issue and sell $125,900 of its common stock, at par, and $250,000 of its preferred stock at ninety-seven cents on the dollar; that it had obtained solvent subscriptions to the amount of $700,000, by which each subscriber bound himself to pay, up to a designated amount, whatever might be necessary to meet the cost of procuring lands and rights of way, the construction of its plant, and expenses incidental thereto, and to receive, when issued, stocks or bonds of the water company, or proceeds derived from the sale thereof, to the amount paid on such subscription for that purpose; that the water company owed $65,000 which it had borrowed,

using these subscriptions as collateral; that the city had made a contract with the water company to purchase from it not less than 650,000,000 gallons of water per year for a period of twenty-five years, and as many more as might be required by the city, up to the capacity of the plant, at the rate of six and one-half cents per thousand gallons, subject to the power of the Public Service Commission to fix rates and the amount to be so furnished, said minimum amount to be delivered, as nearly as practicable, in equal quantities each quarter; that such water should be delivered in the main pipe line of a water works already being operated by the city, and the water company should not make domestic connections, nor operate in competition with the city; that the preferred stock was redeemable only out of the profits of the water company, and ownership of a majority of the common stock gave and will give the city a majority of the voting power, and control of the corporation, unless and until there shall be a default, continuing six months, in the payment of quarterly dividends on the preferred stock, when the holders of shares on which dividends are so in default shall have the right, so long as the default continues, to vote their shares at all stockholders' meetings, in the same manner and with the same effect as shares of common stock are voted.

Appellant cites and relies on *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. 201, 2 Ann. Cas. 978. In that case, the town of Waterloo was to purchase all the stock that was to be issued in a corporation which three members of a contracting company employed to build a water plant for the town had organized as a dummy to evade the constitution; the dummy corporation had encumbered its property by a mortgage for three times the amount that the town was to invest in stock, and the town, by

contract with the corporation, had bound itself to pay a fixed sum each year for twenty-five years to a trustee for the holder of the mortgage bonds, which was to be applied in payment of the principal and interest of such bonds to be issued by the corporation; and the special tax which the town was then authorized to levy for water and light purposes, and also the general taxes of the town and its power to levy the same, as well as "the faith and credit of the said town of Waterloo," were pledged for the payment of the agreed water rents as so provided.

The facts of that case, and also of the case of *Scott* v. *City of LaPorte* (1903), 162 Ind. 34, 68 N. E. 278, 69 N. E. 675, are so different from the facts of the case at bar that neither is an authority on the question now under consideration. The city of Bloomington is not agreeing to pay any money raised by taxation except the $125,000 for which bonds are to be sold, and is not pledging or mortgaging any property that it has or that it is acquiring, nor is it pledging any of its income or revenues, whether raised by taxation or otherwise. But it is merely agreeing to purchase one-third of the capital stock of the water company, and to take and pay for water needed by the municipality and the people of the city, in quantities and at prices subject to regulation by the Public Service Commission. And dividends on the preferred stock marketed to finance the project, as well as the cost of taking up and cancelling such stock, if desired, are to be paid only out of the net profits to be earned by the water company. *Fox* v. *City of Bicknell* (1923), 193 Ind. 537, 141 N. E. 222.

The proposed issue and sale of bonds for the purpose stated will not violate said provision of the Constitution.

No error was committed in admitting the city of Bloomington and the Bloomington Water Company to

take part in the defense.   They were vitally in-
3.  terested in the result of the action, and a com-
plete determination of the controversy as to all
parties having a right to litigate the question whether
or not the bonds should be issued and sold could not
be had without joining them.   §279 Burns 1926, §273
Burns 1914, §272 R. S. 1881.

A court of chancery having obtained jurisdiction of
the subject-matter by virtue of appellant Bollenbacher's
suit to enjoin the mayor from signing the bonds, the
whole controversy was drawn into equity.   And while
an action at law, in mandamus, might have been proper
to compel the signing of the bonds, if no sufficient rea-
son had been shown for invoking the equity powers of
the court, it was not error for a court of chancery that
had already acquired jurisdiction so to frame its decree
as to do justice between all the parties, and award com-
plete relief.

The death of appellee Harris since this cause was sub-
mitted being suggested, the judgment is affirmed as of
the date of submission.