LARTNEC INVESTMENT COMPANY

v.

FORT WAYNE–ALLEN CO. CONVENTION & TOURISM AUTHORITY; Fort Wayne Center Association, Ltd.; and Atlantic Financial Federal Savings and Loan

LARTNEC INVESTMENT COMPANY

v.

CITY OF FORT WAYNE; Fort Wayne Center Associates, Ltd.; Bank Of America National Trust and Savings Association; and Fort Wayne National Bank.

Civ. Nos. F 84–162, F 84–163.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 8, 1985.

John C. Theisen, James D. Streit, Gallucci, Hopkins & Theisen, Fort Wayne, Ind., for plaintiff.

Marvin S. Crell, Fort Wayne, Ind., for defendant Fort Wayne-Allen Co. Convention & Tourism Authority.

W. Paul Helmke, Jr., Fort Wayne, Ind., for defendant Fort Wayne Center Assoc., Atlantic Financial Federal, Bank of America.

Paul D. Mathias, Fort Wayne, Ind., for defendant Fort Wayne Nat. Bank.

Bruce Boxberger, Karen Walker, John J. Wernet, Fort Wayne, Ind., for defendant City of Fort Wayne.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the motions to dismiss filed by all the defendants in these consolidated actions. The motions have been fully briefed. For the following reasons, the motions to dismiss will be granted.

These two cases challenge various actions taken in financing the construction of a hotel adjacent to the Grand Wayne Center in downtown Fort Wayne, Indiana. The Grand Wayne Center functions as a convention and exhibition center, and was built under the direction of the Fort Wayne and Allen County Convention and Tourism Authority ("Authority"). The Authority came to believe that construction of a hotel adjacent to the Grand Wayne Center would "greatly improve the economic viability and increase the demand for" the Center's facilities. Resolution, December 22, 1982. Fort Wayne Center Associates, Ltd. ("Associates"), an Indiana limited partnership, sought financing to build the new hotel, as the cost of construction was estimated to be 18 million dollars.

The City of Fort Wayne ("City") also desired to have the hotel built, and so became involved in the financing process. According to Special Ordinance No. S–265–83, passed by the Common Council of the City, the financing which was agreed upon had these following elements: 10 million dollars of Economic Development Revenue Bonds were to be issued by the City. E.F. Hutton & Company, Inc. agreed to purchase and/or underwrite the issuance of the Bonds provided the bonds were secured by a letter of credit issued by a AA or AAA rated financial institution. Defendant Bank of America was willing to issue such a letter of credit, but only if a standby letter of credit in the sum of six million dollars was issued and the City issued its guarantee for three million dollars. The standby letter of credit was issued by defendant Atlantic Financial Federal Savings and Loan, and Ordinance S–265–83, passed by the Common Council on December 20, 1983 and signed by the mayor on December 21, 1983, officially issued the City's Guarantee. The ordinance itself specified that the money backing up the guarantee would come from the City's Light and Power Utility Fund, a fund generated from revenues paid by a private utility to lease the City-owned utility.

At the same time, the Authority issued a Resolution dated December 22, 1983, in which the Authority agreed to subsidize the principal and interest payments of Associates on a three million dollar mortgage loan from Atlantic. The subsidy payments were to come from revenues generated by a state innkeeper's tax which the Authority collects and spends pursuant to I.C. 36–10–8–12.

Plaintiff ("Lartnec") is an Iowa corporation which owns and operates the Fort Wayne Holiday Inn Downtown, located in Fort Wayne, Indiana. Lartnec has filed these two actions seeking declaratory judgments that (1) the City's guarantee is unconstitutional, invalid and void, and (2) that the Authority's Resolution and subsidy commitment are unconstitutional, illegal, invalid and void. Lartnec advances two arguments against the City's guarantee.

The first claims that the guarantee constitutes a loaning or pledging of the credit of the City to support a private business enterprise for profit in violation of the Constitution of the State of Indiana, article 11, § 12 and article 10, § 6. The second argues that the guarantee creates a potential obligation, indebtedness and charge against the credit of the City in violation of I.C. 36–7–12–25(b).

Lartnec's amended complaint urges four grounds for declaring the Authority's subsidy illegal and void. The first is that the Authority is required by I.C. 36–10–8–12 to spend the innkeeper's tax revenues on "capital improvements." Lartnec contends that the new hotel is a private investment and thus is not a "capital improvement." Second, Lartnec argues that the subsidy violates article 11, § 12 of the Indiana Constitution. Third, Lartnec claims that the Resolution violates the United States and Indiana Constitutions by taking private property (the innkeeper's tax revenues) for other than a public purpose. Finally, the Resolution is said to violate Lartnec's equal protection rights by selectively favoring a competitor over Lartnec.

The defendants have all filed motions to dismiss, and each (either originally or by adoption of the other's arguments) asserts several grounds for dismissal. These various grounds revolve around two basic concepts: (1) justiciability of this action, which involves issues of ripeness, standing, the requirements of diversity jurisdiction, real party in interest, and statute of limitations; and (2) the merits of the claim. The court begins by examining the justiciability issues raised by the motions to dismiss.

## I. Justiciability Issues

All of the defendants have raised several common issues in their motions which the court terms "justiciability issues" because they are offered as reasons for dismissal which do not involve the merits of the claim

(i.e., they attempt to show that Lartnec cannot bring this action in this court). These common issues are: (1) that Lartnec is not the "real party in interest," and so cannot pursue this action; (2) the court lacks diversity subject matter jurisdiction because there is no complete diversity between the parties and Lartnec has not met the jurisdictional amount requirement; (3) the matter is not ripe for consideration; (4) Lartnec lacks standing; and (5) the action is barred by a 30 day statute of limitation.[1] The court considers each of these arguments in turn.

### 1. Real Party in Interest

The defendants argue that Federal Rule of Civil Procedure 17(a) requires that an action be prosecuted in the name of the "real party in interest," which defendants argue should be the owner of the Holiday Inn/Downtown. They have produced evidence that the record owner of the Holiday Inn is the Central-Walter-Sunbelt ("C–W–S") partnership, an Indiana general partnership of which Lartnec is a member. Defendants argue that C–W–S is the real party in interest, and thus should be the plaintiff here.

Lartnec responds by producing copies of agreements whereby the other partners in C–W–S have transferred their interest to Lartnec, and states that the deed showing Lartnec as owner has simply not been recorded yet.

It is clear that these facts, which are necessary to resolve this issue, go beyond the parameters of a motion to dismiss because they involve matters outside the pleadings. When matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss will be converted to a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6). However, this conversion applies only to the real party in interest issue.

1. Defendants Bank of America National Trust and Savings Association and Atlantic Financial have moved to dismiss under Rule 12(b)(2), claiming a lack of personal jurisdiction over them. Because the court decides the motions to

dismiss in favor of the defendants, the court does not analyze or rule on the merits of the personal jurisdiction arguments of these defendants.

Under Rule 56(c), summary judgment can be granted if there is no genuine issue of material fact existing and the moving party is entitled to judgment as a matter of law. Here, neither party disputes that C–W–S is record owner or that Lartnec is the sole remaining partner of C–W–S. Under Indiana partnership law, the last surviving partner has the right to wind up the partnership's affairs. *Marksill Specialties, Inc. v. Barger*, 428 N.E.2d 65, 68 (Ind.App.1982); I.C. 23–4–1–37. Thus, Lartnec has a right to bring this action on behalf of C–W–S, so that it is the real party in interest, either by virtue of its own ownership rights or as last surviving partner of C–W–S.

### 2. Diversity Jurisdiction

Defendants argue that this court lacks subject matter jurisdiction because there is no diversity jurisdiction present here. The court notes that Lartnec's amended complaint in No. F 84–162 alleges two federal constitutional violations, so that this case has proper federal question subject matter jurisdiction regardless of the citizenship of the parties. Further, the lack of diversity argument is premised on C–W–S being the real party in interest. However, Lartnec is the real party in interest, and as an Iowa corporation poses no problems in terms of diversity. Finally, Lartnec's allegations concerning lost profits in excess of $10,-000.00 meets the amount in controversy requirements. Thus, to the extent that diversity requirements are relevant in this action, Lartnec has satisfied them.

### 3. Ripeness

Defendants argue that this matter should be dismissed on the basis of ripeness. This argument is premised on the belief that because Lartnec will not be injured until sometime in the future (if ever), the case is not ripe until such injury occurs. Specifically, the Authority argues that its subsidy Resolution will not become effective unless a Certificate of Occupancy is issued for the hotel—which may never occur.

The doctrine of ripeness arises out of Article III's case or controversy requirements and the related prohibition against rendering advisory opinions. *See Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir.1984). Although the difference between an abstract question calling for an advisory opinion and a ripe case or controversy is not discernible by any precise test, *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), the basic ripeness inquiry is whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality, so as to warrant judicial relief. *Babbit, id.*, 442 U.S. at 298, 99 S.Ct. at 2308; *Railway Mail Assn. v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945); *Wisconsin's Environmental Decade*, 747 F.2d at 411. A plaintiff must demonstrate a "realistic danger of sustaining a direct injury" as a result of the defendant's action, but need not wait until the injury is consummated if the injury is "certainly impending." *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308.

The defendants' ripeness argument challenges Lartnec's injury alone. They conclude that because Lartnec is not damaged now, the controversy here cannot be ripe. However, the *Babbitt* Court found that immediate and present injury is not necessary to ripeness if the alleged injury is "certainly impending." Here, Lartnec alleges two injuries: violation of its rights as a taxpayer of the innkeeper tax, and economic loss from competition with the new hotel. Both of these injuries would occur once the hotel began operating. This court finds that, given the strong public interest and desire in having a hotel adjacent to the Grand Wayne Center, as well as the financial incentive created by the investment and expenditure of the 18 million dollars to build the hotel, such hotel operation is virtually assured so that these injuries are "certainly impending" for ripeness purposes. Thus, the court concludes that this controversy is ripe for adjudication.

### 4. Standing

As was noted earlier, Article III of the Constitution limits the exercise of judicial power to "cases" and "controversies," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and federal courts established pursuant to Article III do not render advisory opinions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). Whether a plaintiff has made out a case or controversy between himself and the defendants is a "threshold question in every federal case," *Warth v. Selden*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), including actions for declaratory judgments. *Golden*, 394 U.S. at 108, 89 S.Ct. at 959; *J.N.S., Inc. v. State of Indiana*, 712 F.2d 303, 305 (7th Cir. 1983). In general terms, the question of standing is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498–99, 95 S.Ct. at 2205 (emphasis in original); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

The concept of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Warth*, 422 U.S. at 498, 95 S.Ct. at 2205; *Alschuler v. Dept. of Housing and Urban Development*, 686 F.2d 472, 476 (7th Cir.1982). The Supreme Court has identified the constitutional limitation as the requirement of "injury in fact"—that the plaintiff must show "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). The injury must be "real, not imaginary; concrete, not abstract; apparent, not illusory; and demonstrable, not speculative." *J.N.S., Inc.*, 712 F.2d at 305; *Myron v. Chicoine*, 678 F.2d 727, 730 (7th Cir.1982).

Even when a case meets the constitutional requirement of injury in fact, "a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors*, 441 U.S. at 99–100, 99 S.Ct. at 1608. The prudential principles cited by courts include: that the plaintiff's injury must be peculiar to himself or a distinct group, and not shared in equal measure by all or a large group of citizens, *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205; that a plaintiff must assert his own rights rather than those of third parties, *see Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 263, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); and that "the interest of the plaintiff, regardless of its nature in the absolute, [must] at least be arguably within the zone of interests to be protected or regulated by the statutory framework within which his claim arises," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 n. 19, 96 S.Ct. 1917, 1925 n. 19, 48 L.Ed.2d 450 (1976); *Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969).

Lartnec asserts two injuries which it claims satisfies the injury in fact requirement of Article III. The first involves Lartnec's status as taxpayer under the innkeeper tax statute. According to Lartnec, the fact that it must pay the tax gives it standing to complain about how the tax money is spent. The second injury alleged is economic. Lartnec claims that the building of the hotel will create competition with Lartnec's Holiday Inn, thus reducing profits and the Holiday Inn's ability to compete with what Lartnec views as a publicly assisted, privately-owned hotel-competitor.

As for the injury based on Lartnec's status as taxpayer, the court finds no injury in fact sufficient to support standing. The court reaches this conclusion because it finds that Lartnec is *not* the tax-

payer of the innkeeper's tax. According to I.C. 6–9–9–2,

> Each year a tax shall be levied on every person engaged in the business of renting or furnishing, for periods of less than thirty days, any room or rooms, lodgings or accomodations in any hotel, motel [or] inn ... . The tax shall be imposed, paid and collected in exactly the same manner as the state gross retail tax is imposed, paid and collected ... and all provisions of I.C. 6–2–1, relating to rights, duties, liabilities, procedures, penalties, definitions, and administration shall be applicable to the imposition administration of the tax imposed by this section except to the extent such provisions are in conflict or inconsistent with the specific provisions of this chapter.

While the first sentence of this section indicates that the tax is *levied* on Lartnec, the section specifies that the tax is to be *imposed* in the same way the state gross retail tax is imposed. The provision governing the imposition of the state gross retail tax is I.C. 6–2.5–2–1(b), which states:

> The person who acquires property in a retail transaction is liable for the tax on the transaction and ... shall pay the tax to the retail merchant as a separate added amount to the consideration in the transaction. The retail merchant shall collect the tax as agent for the state.

Because I.C. 6–9–9–2 requires that the innkeeper tax be collected "in exactly the same manner" as I.C. 6–2.5–2–1, it is obvious that a hotel customer must pay the tax as an added amount to the cost of the hotel room, and the hotel operator is the "retail merchant" who collects the tax "as agent for the state." As hotel operator, Lartnec does not pay its own funds to cover the tax "levied" against it; it simply acts as the agent by which the state collects its tax from the customer. Thus, Lartnec is not injured by the imposition of the tax.

The second injury—the economic loss occasioned by the competition with the new hotel—is much more troubling. Lartnec argues that this economic loss will occur because the Fort Wayne hotel market is such that Lartnec cannot now maintain occupancy rates at a high enough level to be profitable. According to Lartnec, that is the reason why private investors did not try to build the new hotel on their own— they viewed the site as unprofitable. Only through subsidies and loan guarantees, Lartnec contends, did the site become potentially profitable. With the current market unable to maintain profitable operations, Lartnec believes economic loss is a certainty because there will be even more rooms for the too few occupants which exist now.

The defendants argue that this claim of injury is too remote and speculative to support standing because the Grand Wayne Center will alter the market conditions and serve to attract more hotel patrons to Fort Wayne. Thus, they argue, Lartnec might not suffer a loss at all, but rather gain profits from more patrons. At the very least, defendants contend, Lartnec cannot be sure it will lose money.

The determination of whether Lartnec's alleged economic loss constitutes sufficient injury in fact is not easy. On the one hand, the Seventh Circuit has made it clear that injuries which are too remote or speculative cannot be sufficient injury in fact. *J.N.S., Inc. v. State of Indiana*, 712 F.2d 303, 305 (7th Cir.1983). On the other hand, the Seventh Circuit has interpreted the Supreme Court's *Data Processing Services Organization v. Camp* opinion as holding that "a loss of competitive advantage, however small that loss may be, is the type of palpable economic injury that is recognized as sufficient to lay a basis for standing." *Hartigan v. Federal Home Loan Bank Board*, 746 F.2d 1300, 1309 (7th Cir.1984).

The court notes that, for purposes of a motion to dismiss on the basis of standing, the material allegations of the complaint must be taken as admitted, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), and the complaint should not be dismissed unless it appears that the plaintiff can "prove no set of facts in support of his claim which would entitle him to relief." *Id.* 395 U.S. at 422,

89 S.Ct. at 1849; *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, although Lartnec's claims about economic loss in the future are dubious given the change in market conditions which the Grand Wayne Center might produce, the court, for purposes of these motions, accepts as true that Lartnec will suffer some loss of competitive advantage so as to qualify as an injury in fact.

Although this finding clears the first hurdle of standing, the court must still examine the prudential limitations of standing to see if one of them bars Lartnec from having standing to sue. Both sides in this case contest the "zone of interest" limitation. That limitation requires that the plaintiff have suffered the kind of injury "arguably within the zone of interest protected by the statute." *Hartigan,* 746 F.2d at 1309. This necessitates a claim by claim analysis of Lartnec's complaint.

In the No. F 84–163 claim against the City, the first count alleges that the City's loan guarantee constitutes a loaning or pledging of the credit of the state in violation of article 11, § 12 and article 10, § 6 of the Indiana Constitution. Article 11, § 12 provides that

> The State shall not be a stockholder in any bank ... nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation....

Article 10, § 6 provides that

> No county shall ever subscribe for stock in any incorporated company ... nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such company....

■ All parties agree that the history and intent behind article 11, § 12 is set out in *Northern Indiana Bank v. State Bd. of Finance,* 457 N.E.2d 527 (Ind.1983). The Indiana Supreme Court found that § 12 was adopted because the speculative activities of the Indiana state bank, as well as the disastrous investment in internal improvement projects such as canals, turnpikes and railroads, had driven the state to

near bankruptcy by the time of the Constitutional Convention in 1850. Section 12 was designed to prevent the state from being a partner in speculation on private corporate stocks for the financial well-being of the state. The Constitutional Convention was not concerned about state interference with competition, except insofar as the state bank's speculative investments hindered the banking industry. This court finds that the zone of interests to be protected by article 11, § 12 is the financial well being of the state and the freedom of the banking industry from competition by a state bank.

■ Viewed in this light, the zone of interests of § 12 cannot be even arguably extended to Lartnec's claim of economic loss from increased competition. Under the governing Indiana Supreme Court interpretation of § 12, it is clear that § 12 was not designed to protect competitors (outside the banking industry) from other competitors. Thus, Lartnec's injury does not fall within the zone of interests to be protected by this provision.

Although no such thorough analysis exists for article 10, § 6, the court finds that its primary purpose is very similar to article 11, § 12: protection of counties from involvement in, or damage from, financial ventures. This conclusion is supported by the rough parallel between the language of § 6 and § 12. The protection of private businesses from competitive effects resulting from a county's activities is not within the zone of interests to be protected by this provision.

The second count of No. F 84–163 asserts that the City's guarantee creates a potential obligation, indebtedness and charge against the credit of the City in violation of I.C. 36–7–12–25(b). That section states:

> The ordinance [approving the financing of an economic development or pollution control project] may also authorize the issuance of bonds, notes or warrants payable solely from revenues or from payments made under a guaranty agreement by a developer or user or a related per-

son. The bonds, notes, or warrants are not in any respect a general obligation of the unit, nor are they payable in any manner from revenues raised in taxation.

■■■■ The court concludes protection from economic harm caused by competition from a project financed under the provisions of I.C. 36–7–12–1, *et seq.* is not even arguably within the zone of interests to be protected by this statute. A reading of the whole chapter, and 36–7–12–25(b) in particular, indicates that this statute is designed to promote economic development projects. It is not concerned with competitive effects; I.C. 36–7–12–18(a) allows direct loans to developers, as well as issuance of notes, bonds or warrants to finance a project, provided that the fiscal body which must approve the financing finds that "the financing approved ... will be of benefit to the health or welfare of the unit proposing to issue the bonds, notes or warrants...." I.C. 36–7–12–25(a). Obviously, such broad power to finance can and will have effects on competitors; yet the statute is silent as to such effects. This court concludes that this statutory chapter, and I.C. 36–7–12–25(b) in particular, are designed to protect the general public, by both guaranteeing that such projects are designed for its "health and welfare," and by requiring its local governmental machinery to operate within statutory guidelines. It is not designed to protect private competition from new sources of competition. Clearly, Lartnec's interests fall outside the zone of interests to be protected by this statute.

Thus, the court finds that Lartnec does not have standing to assert either of its claims against the City in No. F 84–163.

■■■■ The first claim against the Authority in No. F 84–162 is that the subsidy of principal and interest on Associates' debt obligations constitutes a violation of I.C. 36–10–8–12, which allows a county capital improvement board to use capital development funds to pay for the costs of a "capital improvement." The definition of a capital improvement, found in I.C. 36–10–1–4 is

[a] building, facilities, or improvements that a capital development board deter-

mines will be of general public benefit or welfare, and will promote the cultural, recreational, public or civic well being of the community, including a convention center.

Here again, it is obvious that the intent behind article 10 of Title 36 of the Indiana Code is to promote and protect the interests of the general public by creating local capital improvement boards which can finance or help to finance construction of capital improvements to benefit the general public. The interests of competitors to such capital improvements are not mentioned in the statute, nor are even arguably within the zone of interests which the statute is designed to protect. Lartnec therefore has no standing to raise this issue.

The second claim against the Authority is premised on article 11, § 12 of the Indiana Constitution, which this court previously found Lartnec had no standing to raise. That analysis applies here with equal force.

■■■■ The third claim against the Authority is a violation of the United States and Indiana Constitutions' prohibition against taking private property (the innkeeper tax revenues) for other than a public purpose. Here, Lartnec fails to have suffered an injury in fact. The entire harm of this alleged taking is the taking of the tax revenues. Yet those revenues do not come from Lartnec, but from the hotel patrons. Here, the prudential limitation which precludes standing is not the zone of interests test, but rather the prohibition against asserting the rights of third parties. Thus, Lartnec has no standing to assert this third claim.

■■■■ The last claim in the Amended Complaint is based upon a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article 1, § 23 of the Indiana State Constitution. Lartnec alleges that the Authority's subsidy violates Lartnec's rights by selectively favoring a competitor over Lartnec. Here, Lartnec has standing to raise an equal protection claim because the alleged injury (economic loss from competi-

tion) falls within the claimed equal protection right to be treated in the same manner as other competitors in the downtown Fort Wayne hotel market.

The court therefore finds that Lartnec has no standing to pursue any of its claims except its equal protection claim against the defendants in No. F 84–162. Out of an abundance of caution, however, the court continues to analyze the remaining issues of the motion to dismiss.

### 5. Statute of Limitations

The City argues that the claims of No. F 84–163 are time-barred. The relevant statute of limitations is alleged to be that found in I.C. 36–7–12–27(d), which provides that "[a]n action to contest the validity of bonds, notes, or warrants issued under [I.C. 36–7–12–25] ... may not be commenced more than thirty days after the adoption of the ordinance approving them...." The No. F 84–163 defendants contend that this action, which was commenced on April 25, 1984, was filed more than thirty days after the December 21, 1983 signing of the ordinance approving the loan guarantee.

Lartnec responds by arguing that it is not challenging the validity of the economic development bonds issued to finance the hotel, but rather the three million dollar guarantee used to back up the standby letter of credit of Bank of America.[2] Lartnec argues that the guarantee is not part of the bonds approved in the ordinance, and thus the thirty day limitation for challenging the validity of bonds does not apply. The City contends that the guarantee and the bonds are inextricably tied together because the entire financing package was necessary to issue the bonds, and thus a challenge of the guarantee is a challenge of the bonds themselves.

This court finds that I.C. 36–7–12–27(d) does not apply to this action. That section is limited by its language to contests over the validity of bonds, notes or warrants issued pursuant to I.C. 36–7–12–25. The City's arguments that the guarantee and the issuance of the bonds constitute one transaction are unpersuasive because the City confuses the *process* of bond issuance with the *success* of the process. The Common Council had authority under I.C. 36–7–12–25 to issue bonds without any of the complicated financial arrangements which were in fact adopted. The City's guarantee was not needed to issue the bonds; rather, its role was in assuring the success of the bond issue by providing the assurance E.F. Hutton and the other financial institutions needed to make purchase of the bonds by E.F. Hutton attractive. Precisely because the guarantee was not necessary to the bond issuance process itself but only to its success, the court finds a fundamental difference between the bond and the guarantee such that a challenge to the validity of the guarantee is not a challenge to the validity of the bond governed by I.C. 36–7–12–27. Whether the ten year limitation period of I.C. 34–1–2–3, or the two year period of I.C. 34–1–2–2(1) applies, an issue not decided here, it is obvious that Lartnec's filing suit within four months was timely under any statute of limitations which might apply. The claims against the City are therefore not time-barred.

In summary, the court finds that Lartnec lacks standing to assert all of its claims except its allegations of an equal protection violation. The remaining justiciability issues do not support a dismissal of the action. Out of an abundance of caution, however, the court examines the merits of all six of Lartnec's claims.

---

**2.** The court notes that this distinction is necessarily critical to Lartnec's position, for Lartnec is itself a beneficiary of the City's largesse. According to documents submitted by the City for purposes of its estoppel argument, Lartnec was awarded 1.7 million dollars in economic development bonds when the Holiday Inn Downtown was built. Although the court concludes that a guarantee is not part of the bond process, so that estoppel does not apply, it pauses to point out that Lartnec's analogous financing might be subject to at least some of the same attacks leveled against the current hotel project.

## II. Merits of the Claim

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of plaintiff's complaint as true. *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980). A complaint should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, *Conley* has never been interpreted literally. *Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 654 (7th Cir.1984). The test is whether a complaint contains either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984). This court must consider the complaint in the light most favorable to the plaintiff and must resolve every reasonable doubt in favor of the claimant. *Henry C. Beck Co. v. Fort Wayne Structural Steel*, 701 F.2d 1221 (7th Cir.1983). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff*, 727 F.2d at 654.

With these principles in mind, the court analyzes each of Lartnec's allegations, beginning with the two counts in No. F 84–163.

### 1. Violation of Constitutional Prohibitions Against Extending Credit

Lartnec's first count in No. F 84–163 alleges that the City's guarantee violates article 11, § 12 and article 10, § 6 of the Indiana Constitution. As was noted earlier, the provisions of article 11, § 12 prohibit the state from loaning or extending its credit to a private corporation, while article 10, § 6 prohibits counties from doing the same. The defendants have argued that

(1) these prohibitions do not apply to cities; and (2) no credit is being extended here because the funds being used to back up the guarantee come from the City's Light and Power Utility Fund. The court finds both of these arguments persuasive.

In interpreting the language of article 11, § 12 and article 10, § 6, the court applies the principles of interpretation established by the Indiana Supreme Court. "Judges must enforce the [Indiana] Constitution as written and intended." *Board of Trustees of the Public Employees' Retirement Fund v. Pearson*, 459 N.E.2d 715 (Ind.1984); the "pole-star in the construction of the constitutions is the intention of the makers and adopters." *State v. Nixon*, 384 N.E.2d 152, 157 (Ind.1979).

 The court reiterates its finding in the discussion of standing that article 11, § 12 was intended to protect the *state* from financial ruin, and that article 10, § 6 likewise protects *counties*. The fact that municipal corporations are discussed in other constitutional provisions (*see* article 13, § 1's limitations on municipal debt) but not in article 11, § 12 or article 10, § 6 suggests that the framers of the Indiana Constitution had no intention of applying those provisions to cities. This conclusion is reinforced by at least two Indiana Supreme Court cases which recognized that municipalities could take stock in railroad companies. *See City of Aurora v. West*, 22 Ind. 88 (1864); *Evansville, I. & C. Straight Line R. Co. v. City of Evansville*, 15 Ind. 395 (1860). These cases would be incomprehensible if the constitutional prohibitions on "loaning credit" applied to municipalities. This court concludes that neither of these provisions applies to the City in this case.

 Even if those provisions were to apply, Lartnec's claim would fail because the City is not loaning its credit to a private corporation. Here, the critical fact is conceded by Lartnec: the City's guarantee is, by the very terms of the ordinance authorizing it, to be funded from the City's Light and Power Utility Fund. That fund is gen-

erated by payments made to the City by a private business to use the City-owned utility company. The fund draws no money from the City's budget or tax revenues. Under the article 13, § 1 provisions governing municipal debt, the Indiana courts have repeatedly held that bond issues which are to be paid from revenues of a municipal project and not from tax revenues are not an obligation or indebtedness of the city. *See Letz. Mfg. Co. v. Public Service Commission of Indiana,* 210 Ind. 467, 4 N.E.2d 194 (1936); *Underwood v. Fairbanks, Morse & Co.,* 205 Ind. 316, 185 N.E. 118 (1933); *Bollenbacher v. Harris,* 196 Ind. 657, 148 N.E. 417 (1925); *Fox v. Bicknell,* 193 Ind. 537, 141 N.E. 222 (1923). Although not direct precedent here, these cases are indicative of a fundamental distinction between municipal undertakings financed by normal municipal revenues (i.e., taxes) and those financed by a proprietary function which puts no strain on the city's budget. Here, the Light and Power Utility Fund is a result of the City's ownership of the utility; funds generated from the lease of the utility to a private company are not funds which might be considered normal municipal revenues because usage of the monies in the Fund would not strain the City's resources. This conclusion is reinforced by the fact that paragraph 8(c) of the standby financing agreement which effectuates the guarantee makes it clear that the money to back up the guarantee comes only from the Light and Power Utility Fund, so that the City's financial and credit resources are neither extended to, nor threatened by, the City's guarantee. The court therefore finds that the City's guarantee is not a loaning or extending of the City's credit, so that article 11, § 12 and article 10, § 6 could not be violated by the City's guarantee.

### 2. Violation of I.C. 36-7-12-25(b)

Lartnec's second count in No. F 84-163 alleges that the City's guarantee violates I.C. 36-7-12-25(b), which was quoted in full earlier in this order. Lartnec argues that the guarantee is an obligation of the City in violation of the section.

The court finds Lartnec's position legally incorrect for several reasons. First, as was discussed above, the guarantee is *not* an obligation on the City. Paragraph 8(c) of the standby financing agreement limits funding of the guarantee to the Light and Power Utility Fund, so that the City's financial and credit resources are not endangered by the guarantee. Second, the premise behind Lartnec's argument is that I.C. 36-7-12-25(b) prohibits municipal obligations. That premise is false. The language of I.C. 36-7-12-25(b) specifically states that the bonds used to finance an economic development project "are not in any respect a general obligation of the [governmental] unit." That is not language of prohibition; rather, it is language which *exempts* municipal financing of economic development projects from being obligations of the City. Lartnec's premise is also inconsistent with the implication of article 13, § 1 of the Indiana Constitution, which allows for municipal debt. The last phrase of I.C. 36-7-12-25(b), which states: "nor are they [the bonds, notes or warrants] payable in any manner from revenues raised in taxation," may imply some sort of prohibition, but the language of ¶ 8(c) limiting funds to the Light and Power Utility Fund prevents any violation of this prohibition. Thus, the City's guarantee does not violate I.C. 36-7-12-25(b).

### 3. Authority's Violation of I.C. 36-10-8-12

The first count of No. F 84-162 alleges that the Authority's spending of the innkeeper tax revenues for subsidizing the principal and interest on Associates' mortgage loan violates I.C. 36-10-8-12. Lartnec contends that this section requires a capital improvement board (like the Authority) to use capital development funds to pay for the costs of "capital improvements," and that the Authority's Resolution and subsidy violate this requirement because the hotel is not a "capital improvement." A capital improvement is defined in I.C. 36-10-1-4 as

a building, facilities or improvements that the capital development board determines will be of general public benefit or welfare, and will promote the cultural, recreational, public or civic well being of the community, including a convention center. This includes the site, equipment, heating and air-conditioning facilities, sewage disposal facilities, landscaping, walks, drives, parking facilities, *and other structures, facilities, appurtenances, materials and supplies that are necessary to make any building, facility or improvement suitable for the use for which it was constructed.* (Emphasis added).

The Authority's Resolution specifically stated that "the Authority believes that the construction of such a hotel will greatly improve the economic viability and increase the demand for the Civic Center's facilities." That finding is an adequate determination that the hotel is a capital improvement. The Grand Wayne Center is itself a capital improvement under I.C. 36–10–1–4, and the Authority's finding that the hotel would improve the Grand Wayne Center indicates that the hotel will be of general public benefit by making a capital improvement better. Further, the Authority found that the hotel will increase demand for the Grand Wayne Center, which in turn promotes the economic, cultural, recreational and public or civic well-being of the Fort Wayne community. Both of these findings also indicate that the hotel will make the Center "suitable for the use for which it was constructed." Thus, the hotel is a capital improvement, so that the Authority's subsidy to help finance its construction is not a violation of I.C. 36–10–8–12's requirement that capital development funds be used for "capital improvements."

### 4. Authority's Violation of Article 11, § 12

Lartnec's second count in No. F 84–162 alleges that the Authority's subsidy violates article 11, § 12's prohibition against the state loaning or extending its credit to a private corporation. Here, Lartnec has apparently chosen the wrong constitutional provision to sue under. Given the specific language of article 10, § 6's limitations on counties, this court doubts that § 12's limitations apply to a *county* capital development board. The court therefore considers Lartnec's claim under both provisions.

In prior cases, the Indiana Supreme Court has held that a state commission's financing which was authorized by statute but not issued in the state's name is not an obligation of the state. *See Orbison v. Welsh,* 242 Ind. 385, 179 N.E.2d 727 (1961); *Book v. State Office Bldg. Commission,* 238 Ind. 120, 149 N.E.2d 273 (1958); *Ennis v. State Highway Commission,* 231 Ind. 311, 108 N.E.2d 687 (1952). Here, the Authority was authorized by statute, but was created by the City and Allen County. As such, it is not a creature of the state, but a creature of the county and City. That fact places the Authority even more removed from the state than were the commissions in the cases cited above. This leads the court to conclude that any obligations assumed by the Authority are not obligations of the state, so that article 11, § 12 does not apply to the Authority.

■ Article 10, § 6 prevents a county from loaning its credit to any incorporated company. The question thus becomes whether the Authority's use of hotel tax revenues to subsidize Associates' mortgage is a "loaning of credit." The court finds that it is not. What Lartnec challenges here is the Authority's expenditure of revenues received from the innkeeper's tax on a capital improvement. Lartnec does not dispute the Authority's statutorily-created power under I.C. 36–10–8–12 to spend its revenues to pay for part of the cost of capital improvements. If an expenditure of revenues received is a "loaning of credit," then any legislative action, at both the state and county level, should run afoul of the constitutional prohibitions against loaning credit. The more logical reading of the "loan of credit" prohibition is that it prevents a governmental entity from doing such things as pledging its assets as collateral for a loan to a private corporation. Here, the Authority has simply made a

legislative decision as to how best its revenues can be spent. That does not involve a "loan of credit," so that the Authority's subsidy does not violate ·article 10, § 6 of the Indiana Constitution.

### 5. Taking of Private Property for Other than a Public Purpose

· ▇▇ ·The.·third count of No. F 84–162 alleges that the Authority's collection of the innkeeper's·tax revenues, and the subsequent use of those revenues on the hotel, constitutes a taking of private property (the money · collected for the tax) for a non-public purpose (the privately-owned hotel) in violation of the United States and Indiana Constitutions.[3] The crucial premise in Lartnec's argument is that the tax revenues are being used for a "non-public" purpose; Lartnec does not deny that a governmental agency may be able to take private property (via taxation) for a *public* purpose. *See Dortch v. Lugar*, 255 Ind. ·545, 266 N.E.2d 25, 47 (1971); *State ex rel. Jackson v. Middleton*, 215 Ind. 219, 19 N.E.2d 470, 475 (1939); *Collier Shovel & Stamping Co. v. City of Washington*, 38 Ind.App. 370, 76 N.E. 122, 123 (1905).

The Indiana State Legislature has made it clear that "[t]he financing of economic development facilities ... for use by others is a public purpose." I.C. 36–7–12–3. The statutory authority under which the Authority operates requires that ¯the Authority determine that the project to be financed

be "of general public benefit or welfare" which will "promote the cultural, recreational, public or civic well being of the community," I.C. 36–10–1–4, a determination which this court has previously ruled was made in the Resolution approving the subsidy. It is therefore clear that the application of the innkeeper's tax revenues in subsidizing the hotel project is use of those revenues for a public purpose, so that the premise behind Lartnec's argument fails, and with it the argument as well.

### 6. Equal Protection

The final count of No. F 84–162 asserts a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, as well as the equal protection provisions of article 1, § 23 of the Indiana Constitution. Lartnec argues that the Authority's subsidy violates Lartnec's rights by creating an arbitrary classification which selectively favors a competitor over Lartnec.[4]

In examining legislatively-created classifications under federal equal protection principles, a court must first determine the appropriate level of review to be applied. Current constitutional law recognizes three distinct levels of review. The highest and strictest level is known as strict scrutiny. When a legislative classification works to the disadvantage of a constitutionally suspect class—such as race, nationality, alienage or religious affiliation—or impinges on

---

3. The court notes that Lartnec's allegation that taking of private property for a non-public purpose cannot be the basis for a cause of action under the fifth amendment to the United States Constitution. The fifth amendment is, by its language, concerned with governmental taking of property for public purposes. Thus, concerns about taking for non-public purposes do not implicate the fifth amendment. Taxation does not generally implicate the fifth amendment, except perhaps in the case of a tax so burdensome as to ruin a business. *See Bayside Enterprises, Inc. v. Carson*, 450 F.Supp. 696, 704 (M.D.Fla.1978). Even then, "the taxing authority may exercise a broad range of powers consistent with that constitutional provision." *Id.* The court therefore centers its attention on the Indiana constitutional violation.

4. Although a legislative classification is an essential element of an equal protection claim, ▇▇

Lartnec has never made clear what the classification here really is. The court can detect only one real possibility. Because the act complained of is the subsidy, Lartnec must be complaining that the classification here is in terms of who received the subsidy money, and the complaint here boils down to the fact that Associates gets subsidy money while Lartnec does not. This, of course, bears little logical relevance to Lartnec's complaints about the "fundamental right" to have public funds used for public purposes, which sounds more like a substantive due process claim than an equal protection claim. Lartnec's arguments fail to make this legal distinction. The court here continues to speak in equal protection terms because the legal analysis of a substantive due process claim would involve the same strict scrutiny/rational relationship tests.

a fundamental personal right, then a court may only uphold the classification if it is "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe,* 457 U.S. 202, 216–17 and n. 14, 102 S.Ct. 2382, 2394–95 and n. 14, 72 L.Ed.2d 786 (1982); *Sklar v. Byrne,* 727 F.2d 633, 636 (7th Cir.1984). The second level of review is known as the "intermediate level," and applies to classifications which are not facially invidious but give rise to "recurring constitutional difficulties," *Plyler,* 457 U.S. at 217, 102 S.Ct. at 2395. The only kinds of classifications recognized as requiring this intermediate level are those which restrict access to education, *Plyler,* those based on gender, *see Mississippi University for Women v. Hogan,* 458 U.S. 718, 723–26, 102 S.Ct. 3331, 3336–37, 73 L.Ed.2d 1090 (1982), and those based on legitimacy, *Pickett v. Brown,* 462 U.S. 1, 8, 103 S.Ct. 2199, 2204, 76 L.Ed.2d 372 (1983). If a classification does not fall within the parameters of strict scrutiny or intermediate review, the courts will generally uphold the classification if it is rationally related to a legitimate state interest (or as the *Plyler* Court phrased it, if it "bears some fair relationship to a legitimate public purpose," 457 U.S. at 216, 102 S.Ct. at 2394). *Sklar,* 727 F.2d at 636.

■ Lartnec argues for strict scrutiny review of the Authority's subsidy, claiming that the "fundamental right" to have taxes used for public purposes is violated by financing a project which Lartnec believes is primarily a private business. However, Lartnec's argument fails on three levels. First, the right to complain about the use of taxes inheres in the taxpayer; as was established earlier, Lartnec is not the taxpayer of the tax funds being used by the Authority, so that Lartnec would have no standing to complaint about this "fundamental right." Second, the use of taxes (and the rights, if any, of taxpayers to complain of that use) has never been recognized as one of the fundamental personal rights mandating strict scrutiny. *See e.g., Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 547–51, 103 S.Ct. 1997, 2002–03, 76 L.Ed.2d 129 (1983). Finally, even if there were some special

right to have tax revenues used for public purposes, Lartnec could not complain of any violation of that particular right, for it is abundantly clear that the subsidy in question is use of tax revenues for a legislatively-determined public purpose. The fact that Lartnec is upset by a policy decision by the Authority to help finance the new hotel does not alter the public purpose behind the expenditure. Lartnec's claim is, quite simply, a challenge to an economic policy decision of the Authority, and is therefore entitled only to the lowest level of equal protection scrutiny.

■ Under that standard, the Authority's subsidy need only be rationally related to a legitimate state interest. Here, the state interest is the promotion of local economic development. The statutory machinery creating "capital improvement boards" (*see* I.C. 36–10–1–1, *et seq.*) such as the Authority makes this abundantly clear. The Authority's Resolution approving the subsidy specifically found that the hotel would enhance the economic development of the downtown Fort Wayne area, and that the subsidy would assist in that enhancement. The court finds that the Authority's subsidy is rationally related to Indiana's legitimate interest in promoting local economic development. The subsidy therefore does not violate Lartnec's federal equal protection rights.

Under Indiana court interpretations of article 1, § 23 of the Indiana Constitution, the result is the same. In *Winney v. Board of Commissioners of the County of Vigo,* 174 Ind.App. 624, 369 N.E.2d 661 (1977), the court stated: "Absent a showing by the plaintiff that a fundamental right is involved, a statute will be declared to violate the equal protection clause because it contains some type of classification only if it is shown that the classification is arbitrary or capricious or does not bear a reasonable relation to the legislative objective." *Id.,* 369 N.E.2d at 665. *See Forks v. City of Warsaw,* 257 Ind. 237, 273 N.E.2d 856, *cert. denied,* 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80 (1971). The analysis above establishes that there is a reasonable relation between the use of the subsidy and the legislative objective of encouraging eco-

nomic development in downtown Fort Wayne. It is also clear that the alleged classification here is not arbitrary or capricious, as the Authority determined that a hotel adjacent to the Grand Wayne Center would be a good way to increase use of the Center itself. Thus, the subsidy does not violate Indiana equal protection law.

The court therefore concludes that Lartnec has no standing to assert any of its claims except its equal protection claim, and that all of its claims (including the equal protection count) fail on their merits. The complaints fail to allege a viable legal theory under which Lartnec could recover. Lartnec has attempted to translate its fears about a new competitor in the downtown Fort Wayne market into a legal battle over the propriety of the actions of local governmental agencies committed to improving the economic development of Fort Wayne. That translation fails in all respects, and the motions to dismiss by all of the defendants will therefore be granted.

For the above stated reasons, the motions to dismiss of all defendants are hereby GRANTED.