The **NORFOLK FEDERATION OF BUSINESS DISTRICTS,**
Plaintiff,

v.

The **DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, in Its Official Capacity as an Agency of the Government of the United States, Henry Cisneros, in His Official Capacity as the Secretary of the Department of Housing and Urban Development, City of Norfolk, and the Norfolk Redevelopment and Housing Authority, Defendants.**

Civil Action No. 2:96cv308.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 12, 1996.

Andrew Michael Sacks, Stanley E. Sacks, Sacks, Sacks & Imprevento, Norfolk, VA, for Plaintiff.

Philip Richard Trapani, City Attorney, Bernard A. Pishko, Assistant City Attorney, Office of the City Attorney, Norfolk, VA, William G. Broaddus, Earle Duncan Getchell, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, James Long Chapman, IV, Francis N. Crenshaw, David Harlen Sump, Crenshaw, Ware & Martin, Norfolk, VA, for Defendants.

## OPINION and ORDER

MORGAN, District Judge.

Defendants the city of Norfolk and the Norfolk Redevelopment and Housing Authority have filed a motion to dismiss all counts of Plaintiff's complaint. For the reasons outlined below, the Court **GRANTS** their motions and dismisses counts I, II, III, V, VI, VII, VIII, IX with prejudice and dismisses count IV without prejudice. The Court announced its ruling from the bench on April 26, 1996, and now publishes this opinion and order to further explain the rationale for its findings.

### I. Factual and Procedural History

On March 21, 1996, the Norfolk Federation of Business Districts ("NFBD") as Plaintiff filed a complaint with this Court against the following Defendants: the city of Norfolk ("City"); the Norfolk Redevelopment & Housing Authority ("NRHA")[1]; the United States Department of Housing and Urban Development ("HUD"); and Henry Cisneros

---

**1.** NRHA is alleged to be a separate and independent local government entity, and therefore a "person" for purposes of title 42 U.S.C. § 1983.

NRHA purportedly owns the 17 acre parcel of land on which it and the City propose to construct the MacArthur Center.

in his official capacity as Secretary of HUD. NFBD purports to represent eight member businesses or merchant associations which represent affiliated businesses and individuals in the following geographical areas within the city of Norfolk: Greater Wards Corner Business Association; Janaf Shopping Center Merchants Association; MidTown Industrial Business Association; Military Circle Merchants Association; Norview Business Association; Ocean View Merchants Association; Old Dominion Merchants Association; and 35th Street Merchants Association. It claims to be acting "as and for itself as well as on behalf of the legal interests and rights of its constituent member merchant or business associations and their affiliated member businesses and individuals." (Comp. at ¶ 17.)[2]

■ Plaintiff also claims that it has standing as it has suffered and will continue to suffer actual or threatened injury from Defendants' actions without the aid of this Court. Although Defendants City and NRHA challenged Plaintiff's standing in their initial briefs, they appear to have abandoned this position as they failed to raise it in oral argument. The Court **FINDS** on the pleadings that Plaintiff has alleged sufficient standing to bring its complaint.

NFBD charges that each Defendant has violated its rights under the United States Constitution, federal laws, the Constitution of the Commonwealth of Virginia, the Code of Virginia, and the general laws of the Commonwealth of Virginia. More specifically, Plaintiff alleges in Count I of its complaint that the City and NRHA ("Municipal Defendants") violated its constitutional rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses arising from these Defendants' "unfair and discriminatorily selective favoring of private business competitors of Plaintiff's constituents through heavy public subsides to entice those competitors to participate in Norfolk's MacArthur Center Project." (hereinafter "Center") (Compl. at ¶ 1.) It claims that under title 42 U.S.C. § 1983, this Court has

"special civil rights" jurisdiction pursuant to title 28 U.S.C. §§ 1331, 1343(a)(3), (4). In addition, Plaintiff asserts this Court's federal question jurisdiction under title 28 U.S.C. § 1331 due to its claims under the Fourteenth Amendment.

Counts II and III allege that the Municipal Defendants violated its state-created property rights by violating its Due Process Rights under the Fourteenth Amendment when it allegedly unlawfully utilized and planned to continue to utilize publicly raised tax money to benefit private parties and unlawfully took and planned to continue to take private property in the form of money raised in the exercise of its taxing authority for private purposes. Plaintiff asserts the same jurisdictional claims for Counts II and III as for Count I.

Plaintiff brings Count IV under 42 U.S.C. § 5301 *et seq.* and its attendant regulations, claiming that under § 108 of the Loan Guarantee Application made by the Municipal Defendants to HUD, *see* 42 U.S.C. § 5308, these Defendants failed to meet statutory and regulatory criteria to justify such a guarantee. It similarly asserts that the federal government through HUD wrongfully approved the Municipal Defendant's application to the prejudice of Plaintiff's Constitutional rights. Plaintiff claims that this Court has jurisdiction under title 28 U.S.C. §§ 1331, 1346, and 1361.

Count V charges the Municipal Defendants with violating the federal statutory rights of Plaintiff which arise out of their improper use of the § 108 Loan Guarantee statutes and regulations. NFBD asserts federal jurisdiction under title 28 U.S.C. §§ 1331, 1343(a)(3), (4) as it brings this count under title 42 U.S.C. § 1983.

The remaining Counts VI—IX rest with the supplemental and pendant jurisdiction of this Court as they lie under the Virginia Constitution, the Code of Virginia and the general laws of the Commonwealth of Virginia. 28 U.S.C. § 1367. Plaintiff asserts that the Commonwealth's Constitution as well as

---

**2.** Hereinafter, Plaintiff will be referred to singularly, although the Court acknowledges the pur-

ported interests of its constituents.

these laws prohibit actions of the Municipal Defendants in connection with the proposed financing of the Center.

The City filed a Motion to Dismiss pursuant to Rule 12(b)(6) on April 5, 1996; it then filed a Motion to Shorten Time and Schedule Hearing on the basis of the substantial prejudice it alleges will occur with any delay. Fed.R.Civ.P. 12(b)(6); 10(E)(1). NRHA filed a similar Motion to Dismiss premised upon Rule 12(b)(6) on April 5, 1996. Plaintiff has responded with a Consolidated Brief in Opposition to Motion to Dismiss of Defendants City and NRHA on April 22, 1996, at which time it also filed an "Objection to Conversion of the city of Norfolk and Norfolk Redevelopment and Housing Authority's 12(b)(6) Motion Into a Summary Judgment Motion; or Motion to Defer Such Conversion Until a Reasonable Opportunity For Discovery, and Incorporated Brief."

This matter came before the Court on the motions to dismiss of the Municipal Defendants. As of the hearing, neither HUD nor Secretary Cisneros had been served.

## II. Analysis

### A. STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendants urge that Plaintiff's Complaint fails to set forth facts upon which a claim for relief could stand. A 12(b)(6) motion requires the Court to accept the factual allegations in Plaintiff's complaint and to construe them in the light most favorable to it as the non-moving party. *E.g., Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). The claim should not be dismissed for failure to state a claim unless it appears to a certainty that Plaintiff can prove no set of facts in support of the claims which would entitle it to relief. *Id.; see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of "recovery is remote and unlikely." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In ruling on a 12(b)(6) motion, the Court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

■ Defendant City has attached a copy of the Redevelopment Plan to its Motion to Dismiss. Ordinarily, attachments such as exhibits or affidavits could not be considered by the Court in analyzing a motion to dismiss, or the Court would of necessity have to convert the motion to one for summary judgment and accept attachments outside the pleadings from both parties under Rule 56. Fed. R.Civ.P. 56. A court has wide discretion to exclude matters outside of the pleadings in order to preserve the motion as one to dismiss—"the mere submission of extraneous materials does not by itself convert a Rule 12(b)(6) motion into a motion for summary judgment." 2A *Moore's Federal Practice* ¶ 12.09[3] (1995). However, in this case, the Court may in fact consider this particular attachment due to its unique characteristics without converting the motion to one for summary judgment.

■ Federal Rules of Civil Procedure, 12(b)(6) state that if matters outside the pleadings are "presented to and not excluded by the court" then the motion is to be converted into a motion for summary judgment according to Rule 56. Nonetheless, a brief or memorandum submitted in support of a motion to dismiss is not considered to be outside of the pleadings, *see id.* (citing *Richardson v. Rivers,* 335 F.2d 996 (D.C.Cir. 1964)), and exhibits or other documents incorporated by reference into the pleadings are also not matters outside the pleadings. *Id.* (citing *Solis–Ramirez v. United States Dept. of Justice,* 758 F.2d 1426 (11th Cir. 1985)). Where reports or documents are attached to complaints or adopted by reference into pleadings, Fed.R.Civ.P. 10(c), no conversion need occur. *See Solis–Ramirez,* 758 F.2d at 1430 (referring specifically to documents appended to a complaint).

Furthermore and perhaps more importantly, the document the City attached to its brief in support of its motion to dismiss and

which it adopted by reference in its brief, is a matter of public record.[3] The attached exhibit is the Redevelopment Plan adopted by the City and, as a public document, it may be considered by the Court in making its determination under Rule 12(b)(6) without converting the motion into one for summary judgment. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990).

Therefore, the Court may and will consider the exhibit appended to the brief by Defendant City in rendering its decision on Defendant's Motion to Dismiss.

### B. THE COMPLAINT

#### 1. Federal Constitutional Violations Alleged in Counts I, II, & III

##### a. NFBD's Claims

The City and NRHA entered into a cooperation agreement which was adopted by the City of Norfolk Council by ordinance on May 31, 1994. NFBD alleges that this agreement provides that the City will guarantee all financial obligations of NRHA pertaining to the Center, provide NRHA with all funds required for the Center, and meet all NRHA obligations and payments regarding the Center. In the agreement the City also allegedly approved NRHA's application to HUD for a § 108 Loan Guarantee in the amount of $32,815,000.00 and authorized the issuance of up to $50,000,000.00 in parking revenue bonds for garage construction (what NFBD refers to as a "public" project) and up to $13,537,050.00 in general obligation bonds for Center infrastructure improvement (what NFBD refers to as a "private" project).

The City has purportedly estimated the cost of construction of the Center to be $297,-000,000.00, of which amount the City will contribute $97,000,000.00 of public funds and Taubman MacArthur Associates Limited Partnership ("Taubman"), a private corporation, will contribute $200,000,000.00. The City has also agreed to Dillard's (an anchor store to the Center) demands that it move its fire station at a cost to the City of $6,100,-000.00. Plaintiff claims that its experts estimate a more realistic total for the amount of money the City will have to contribute in addition to construction costs at $29,000,-000.00, bringing the City's total estimated expenditures on the Center to $132,000,-000.00.

The construction of a Nordstrom department store, described by the City and NRHA as the main focus of the Center, will be almost completely funded by public monies and is estimated to cost $36,000,000.00 to construct. Plaintiff claims that the Municipal Defendants

> selectively favor Nordstrom, a private competitor of many of Plaintiff N.F.B.D.'s constituents, with a locally unprecedented infusion of *public* monies, for the *private* benefit of Nordstrom, by agreeing to build the Nordstrom store to Nordstrom's and Taubman's customized specifications with such *public* money.

(Compl. at ¶ 51.) Nordstrom is evidently slated to pay $200,000.00 per year to NRHA as the owner of the Center in rent, which Plaintiff asserts is only approximately $1.00 per square foot of space, while average office space in Norfolk's downtown is currently $14.00 per square foot. The HUD guaranteed loan of $32,815,000.00 plus $3,000,000.00 from Taubman plus $185,000.00 from the City by general obligation bonds with repayment from contributions from City taxpayers such as Plaintiff will all go toward the construction of the Nordstrom store.

NFBD concludes that the Municipal Defendants' plan will ultimately violate its constitutional rights. This deduction rests upon its view that the Municipal Defendants are effectively publicly subsidizing two main private businesses with largely public taxpayer funds. NFBD alleges that the Municipal Defendants' actions constitute an arbitrary and capricious selective favoring of these competitors to Plaintiff with an improper use of these public funds, thus violating both their Equal Protection and Substantive Due Process rights. Plaintiff claims that its researchers have deemed the Center "not supportable" and destructive to Plaintiff's busi-

---

**3.** Counsel for both the City and NFBD acknowledged the status of this document as one in the public record upon the Court's questioning at oral arguments.

nesses. Furthermore, NFBD alleges that a cause of action lies in the fact that the Municipal Defendants allegedly knowingly solicited private competitors with public funds all the while realizing the economic harm which would accrue to Plaintiff.

Plaintiff concludes that "it is a violation of existing businesses' constitutional rights to have government publicly subsidizing their private competitors in a way that threatens to destroy the existing businesses." (Compl. at ¶ 79.) Thus, NFBD arrives at its conclusory allegations that the Municipal Defendants are violating its Due Process and Equal Protection rights under the Fourteenth Amendment, as they have "undertaken an arbitrary, unfair, and discriminatory selective favoring of certain private businesses, and competitors of N.F.B.D.'s constituents, with the improper use and abuse of public funds." (Compl. at ¶ 62.)

### b. Constitutional Scrutiny for Equal Protection and Substantive Due Process Claims

██ Count I in essence charges that "it is a violation of the existing business' constitutional rights to have the local government publicly subsidizing their private competitors in a way that threatens to destroy the existing businesses." (Compl. at ¶ 79.) Plaintiff

misstates the economic protections afforded by the Constitution.[4] Only laws affecting "fundamental rights" are within the purview of the Fourteenth Amendment. *National Paint & Coatings Ass'n. v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). "Corporations do not have fundamental rights; they do not have liberty interests, period." *Id.* The only interests Plaintiff can assert which could be directly affected by the Municipal Defendants' Center project is the interest in obtaining optimal results from their businesses—undeniably this "interest" fails to measure up to a "fundamental right." *Id.* at 1130.

██ Both substantive due process and equal protection claims not implicating a *fundamental* right are reviewed under the rational basis test, not under strict scrutiny.[5] *See National Paint & Coatings*, 45 F.3d at 1129–30. "This test is generally easily met" by the defendant, as all that is essentially required is that a set of facts is conceivable which would justify the legislative action. *Cash Inn of Dade, Inc. v. Metropolitan Dade Co.*, 938 F.2d 1239, 1241 (11th Cir.1991); *see also National Paint & Coatings*, 45 F.3d at 1129 (holding that "economic regulation must

4. Plaintiff's reliance on *Plyler v. Doe* is misplaced. 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). NFBD quotes *Plyler* as saying that "[i]n applying the Equal Protection Clause to most forms of state action, we thus seek only *the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." Id.* at 216, 102 S.Ct. at 2394 (as cited and emphasized in P.'s Consolidated Brief in Opp. at 33). *Plyler* involved a Texas statute which withheld from local school districts any state funds for the education of children not legally admitted into the United States. The Supreme Court deemed alien status to be a suspect classification, and based its Equal Protection analysis on the fact that this legislation discriminated against a suspect class and thus merited strict scrutiny by the Court.

By contrast, the case at hand involves no illegal or even legal suspect classifications. Furthermore, were the Court to apply the *Plyler* test Plaintiff quotes in its brief, the Court would in fact still find that Municipal Defendants' actions under the Redevelopment Plan bear some fair relationship to a legitimate governmental purpose. *See infra* § B.1.c. The Supreme Court enumerated the elements to the proper test to be

applied in cases of alleged economic harm in *F.C.C. v. Beach Communications, Inc.* It stated that

> [i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge [sic] if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211, 221 (1993). Hence, the Court would be mistaking constitutional jurisprudence if it were to apply the *Plyler* test Plaintiff urges rather than the appropriate rational basis standard.

5. The standard for evaluating substantive due process challenges to social and economic legislation is virtually identical to the 'rational relationship' test for evaluating equal protection claims.... [A]ny plausible reason supporting [the legislature's] action in enacting the suspect legislation satisfies the 'rational basis' test. *Silver v. Baggiano*, 804 F.2d 1211, 1218 (11th Cir.1986).

be evaluated under equal protection principles, and that laws supported by a rational basis are within the power of the elected branches of government."). In fact, "the legislation must be sustained if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired goal." *Id.* The Court's only real task once it recognizes such a conceivable basis for the legislative decision is to determine whether that decision rationally serves this purpose. *See TRM, Inc. v. United States,* 52 F.3d 941, 946 (11th Cir.1995). The legislation need not even utilize the least restrictive means to achieve its goal. *See National Paint & Coatings,* 45 F.3d at 1129–30.

### c. Application of Rational Basis Review to Count I

■■■ Plaintiff's position is a difficult one. Challengers of an economic plan, rule, or tax must "negative every conceivable basis which might support it." *Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). The presumption of constitutionality is a strong one, only overcome by an explicit demonstration of a violation of Equal Protection or Due Process. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364–65, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351, 358 (1973). A classification or plan "having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). Thus, anyone contesting the constitutionality of a legislative or governmental decision impacting economic interests must bear the burden of showing it does not rest upon any reasonable basis and is essentially arbitrary. *Id.* at 79, 31 S.Ct. at 340–41. Here, Municipal Defendants point to their Redevelopment Plan, and the Court can easily discern that conceivable bases for the Center exist from that document. The 1958 Redevelopment Plan for the "Downtown Redevelopment Project—North" clearly states that among its objectives, it seeks to "eliminate existing blight and deterioration, to correct the environmental and functional causes

thereof, to eliminate the physical, social and economic effects thereof, to prevent the recurrence of blight and to foster the public welfare." (Ex. A § A.2.) Although this first objective is the most broad, the Plan also lists nine additional goals.

■■■ While it is true that a legislative declaration, such as that of § 36–53—which specifically states that the elimination of blighted and slum areas is to be a goal of the Housing Authorities and is a legitimate public purpose—is not conclusive, these declarations are presumed to be correct. *See Hunter v. Norfolk Redevelopment & Housing Authority,* 195 Va. 326, 78 S.E.2d 893, 899 (1953) (citing *City of Richmond v. Dervishian,* 190 Va. 398, 405, 57 S.E.2d 120, 123 (1950)); Va.Code §§ 36–48 through –55 (demonstrating that the General Assembly has deemed projects like this Redevelopment Project to be rationally related to a legitimate purpose).

It is not within the purview of this Court's authority to question the wisdom of the legislative choices of which Plaintiff complains. *See Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963) ("The doctrine that ... due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely ... has long since been discarded."). Even if the Court were to adopt Plaintiff's view that this project is untenable, this fact would not change the ultimate finding. Plaintiff's argument still rests in part on an evaluation of the economic wisdom and fairness of the Plan, and this Court has no jurisdiction to determine whether the project is a good one or a fair one—"[t]he power to decide, to be wrong as well as to be right on contestable issues, is both privilege and curse of democracy." *National Paint & Coatings,* 45 F.3d at 1127.

■■■ Therefore, where a legislative action has an accepted public purpose as its primary object, negative economic repercussions such as those of which Plaintiff complains, must be considered merely incidental by this Court. *See id.; Infants v. Virginia Housing Development Authority,* 221 Va. 659, 272 S.E.2d 649, 657 (1980). The legiti-

macy of at least this first listed objective of the Plan is clearly bolstered by case law specifically finding this goal to be a valid one under the rational basis standard. *See e.g., Hunter*, 78 S.E.2d at 900 ("[T]he majority view is that the primary purpose of the legislation is the elimination and rehabilitation of the blighted and slum sections of the cities, that such purpose falls within the conception of public use, and that ... [potentially harmful fallouts to individuals from this plan are] merely incidental to the primary purpose of the [action]."); *Infants*, 221 Va. at 670, 272 S.E.2d 649.

Plaintiff maintains it adequately alleged that the actions of the Municipal Defendants in favoring its competitors in the selection process "lack the requisite level of 'fair relationship to a legitimate public purpose,'" (P.'s Consolidated Brief in Opp. at 33) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). The Court FINDS that Plaintiff's allegations fail to raise a constitutional issue as to the legitimacy of the goals set forth in the Redevelopment Plan—a document consistently referenced in documents Plaintiff itself adopts by reference in its complaint.

NFBD's allegation that Municipal Defendants are acting for the benefit of Nordstrom's is frivolous. Where the Municipal Defendants rely upon an established public document like the Redevelopment Plan, such an allegation cannot rise to the level of a legitimate material issue. Furthermore, to the extent that Plaintiff attempts to rely upon an unfair competition claim, this Court in *Reasor v. City of Norfolk*, 606 F.Supp. 788, 796 (E.D.Va.1984), sustained a similar motion to dismiss, holding that the City could in fact engage in anti-competitive acts to further redevelopment projects.

■ Plaintiff has imaginatively attempted to clothe the efficacy, wisdom, or economic fairness of a governmental action in the cloak of an equal protection claim. It is inappropriate for the Court to review such efficacy, wisdom or economic fairness once it has found a rational basis for the decision. *See National Paint & Coatings*, 45 F.3d at 1127 ("Outside the realm of 'heightened scrutiny' there is ... never a role for evidentiary

proceedings."). Thus, regardless of the wisdom of the Center or the economic harm which may befall Plaintiff or the City because of the Plan, the Court FINDS that Municipal Defendants' Center bears a rational relation to the legitimate governmental purpose of eliminating blight. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–14, 57 L.Ed.2d 91 (1978); *Lartnec Investment Company v. Fort Wayne–Allen Co. Convention & Tourism Authority*, 603 F.Supp. 1210, 1226 (N.D.Ind. 1985); *Rudder v. Wise County Redevelopment and Housing Authority*, 219 Va. 592, 249 S.E.2d 177, 179 (1978), *appeal dismissed*, 441 U.S. 939, 99 S.Ct. 2154, 60 L.Ed.2d 1040, *reh'g denied*, 444 U.S. 888, 100 S.Ct. 188, 62 L.Ed.2d 122 (1979).

Accordingly, the Court **GRANTS** Defendants' motions to dismiss Count I of the complaint.

#### d. Application of Rational Basis Review to Counts II & III

This Court has already made clear that in cases involving alleged economic harms, the Due Process Clause requires a rational basis review under substantive due process as well as equal protection. Under neither theory would this analysis be "'a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) (citations omitted); *Lincoln Federal Labor Union No. 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 536, 69 S.Ct. 251, 257, 93 L.Ed. 212 (1949). These decisions are not subject to courtroom fact finding, and in fact, may even be supported and upheld by the Court if they are based on "rational speculation unsupported by evidence or empirical data" or if merely a conceivable basis for the action exists. *F.C.C. v. Beach Communications, Inc.*, 508 U.S. at 314–16, 113 S.Ct. at 2102.

■ Plaintiff alleges in Counts II and III that Municipal Defendants have violated certain of its state-created property rights which thereby violate the Due Process Clause of the Fourteenth Amendment. It claims in Count II that Defendants are unlawfully utilizing public tax funds to benefit

private parties and that such action amounts to an unlawful taking. Plaintiff maintains that under Virginia law, a tax is only to be used for public purposes; therefore the Municipal Defendants' use of public tax money to benefit private parties or purposes violates Virginia law as well as their expectations under the Fourteenth Amendment. Count III adds the charge that Municipal Defendants are prohibited under Virginia law from taking private property—here, NFBD's tax money—and applying it for private purposes.

NFBD asserts that it enjoys rights under Virginia law to be free from government confiscation and taking of private property to benefit private entities or purposes and that its expectation vests federally protectable property interests in the right to be free from takings for private purposes. Again, it claims that its substantive Due Process rights are being violated under the Fourteenth Amendment, as it alleges that the Municipal Defendants' agreement to utilize private property taken via their taxing powers for private business competitors is arbitrary and capricious.

The Court has already discussed at length the fact that legislative actions taken for the primary objective of achieving a public purpose such as eliminating urban blight create only incidental private benefits or harms. *See supra* § II.B.1.c. Furthermore, Chapter 1 of title 36, the Virginia Housing Authorities Law, does not grant housing authorities the power to impose or collect taxes and the Court can find no assertion in Plaintiff's pleadings to the contrary with regard to NRHA. The fact that Plaintiff has failed to allege that NRHA itself has breached a duty not to tax to benefit private purposes bolsters the Court's decision that its analysis once more must adhere to the dictates of minimum scrutiny.

 Only laws affecting fundamental rights regarding personal property fall within the purview of the Substantive Due Pro-

cess Clause. *See supra* § II.B.1.b.; *e.g., National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir.1995) (citing *Reno v. Flores*, 507 U.S. 292, 301–03, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993)); *TRM, Inc. v. United States*, 52 F.3d at 945. The rational basis test asks not whether the legislation or the official action "is in every respect logically consistent with its aims to be constitutional," rather it "is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

As with the Equal Protection analysis in Count I, Plaintiff must plead facts that demonstrate there is no rational relationship between the redevelopment project plan and the legitimate governmental interests of economic development and eliminating urban blight. *See Lartnec Inv. Co. v. Fort Wayne-Allen Co. Convention and Tourism Auth.*, 603 F.Supp. 1210 (N.D.Ind.1985).[6] Heightened scrutiny under the Fourteenth Amendment is not available in this case. Defendants' reliance upon the Redevelopment Plan allows them to easily meet the rational basis requirements necessary for the Court to find Plaintiff has failed to state a substantive due process claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Accordingly, the Court **GRANTS** Municipal Defendants' motions to dismiss counts II and III of the complaint.

#### 2. Count IV

 Count IV alleges certain violations of the Housing and Community Development Act of 1974, 42 U.S.C. § 5308, in Defendant City's § 108 loan application to HUD. While both Municipal Defendants attempt to defend this charge, they ultimately lack the requisite standing to do so.

---

6. A district court faced with strikingly similar facts has held that the use of hotel tax revenues to subsidize the mortgage on a hotel constructed by a city and city-county tourism authority was not an unconstitutional taking of private property for a private purpose. *Lartnec Inv. Co. v. Fort Wayne-Allen Co. Convention and Tourism Auth.*,

603 F.Supp. 1210 (N.D.Ind.1985). Many state supreme courts have echoed this result by finding that credit, loans, or economic inducements to private enterprises from governments are not unconstitutional as they are reasonably related to legitimate government interests. (*See* Brief in Support of 12(b)(6) Motion at 17–19, n. 10.)

The City claims that both it and NRHA are beneficiaries of the HUD loan guarantee and therefore are "as interested, if not more so, in the outcome of the process than the loan guarantor." (D.'s Reply Memo. at 19.) In fact, the City asserts, HUD may be indifferent as to whether this loan guarantee proceeds, while the City and NRHA are vitally interested. The City also maintains that as the guarantor, it asserts the rights to raise all the defenses the principal could raise.

The Court **FINDS,** however, that Defendants HUD and Secretary Cisneros, although not yet served by Plaintiff, are the only defendants who are actually accused in this count of any wrongdoing.[7] Therefore, the Court will not sit in judgment on the sufficiency of the Municipal Defendants' proffered defenses. Nonetheless the Court will not ignore Municipal Defendants' allegations regarding the effect that delay could have on the Center. Accordingly, the Court **DISMISSES** Count IV without prejudice. If Plaintiff still wishes to pursue this claim against HUD and Secretary Cisneros, it must properly serve these Defendants with a new complaint asserting such cause of action.

### 3. Count V

■ Plaintiff alleges that title 42 U.S.C. § 1983 preserves all rights, privileges, and immunities secured by the "laws" of the United States, and it argues that HCDA, title 42 U.S.C. § 5301, *et seq.* as well as its attendant regulations in 24 C.F.R. § 570.200, *et seq.,* is amongst those "laws." Thus, it concludes, the Municipal Defendants are liable according to § 1983 for the alleged impropriety in which HUD engaged in approving their § 108 loan application. In essence its claim is comprised of a series of inferences. Since title 42 U.S.C. § 1983 guarantees the rights secured by the "laws" of the United States, and Plaintiff has alleged that Municipal Defendants have violated the terms of the § 108 loan and hence have violated the statutory and regulatory provi-

sions of HCDA, Plaintiffs must therefore have sufficiently asserted a cause of action.

■ The Court will not follow this stacking of inference upon inference presented by Plaintiff, however, as it distorts the substance of these laws. Count V cannot support an action under title 42 U.S.C. § 1983 because § 108 of HCDA does not create any enforceable rights in the general public or individual citizens. A court's inquiry under § 1983 examines whether the provision allegedly violated was intended to benefit the complainant. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). HCDA does not in fact imply any such intent to create a right to sue; instead, § 108 is designed to benefit eligible public entities by providing loan guarantees to assist in obtaining financing. *See* 42 U.S.C. § 5308. Congress must explicitly state any conditions it would attach on grants of federal funds in the applicable legislation. *See Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539–40, 67 L.Ed.2d 694 (1981).

Even given Plaintiff's assertions that it is specifically affected by the City's proffer of other HUD loans as collateral for the § 108 loan, § 1983 cannot provide a cause of action where there is no privilege, immunity, or right secured by the Constitution or federal law and implicated by the actions of which a plaintiff complains. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516–17, 110 L.Ed.2d 455 (1990). Section 108 merely authorizes the Secretary of HUD to guarantee loans "upon such terms and conditions as the Secretary may prescribe...." 42 U.S.C. § 5308(a). The Court **FINDS** that the language of § 108 does not create enforceable rights in persons allegedly affected by projects funded by loan guarantees granted under its terms. Further, if HUD has improperly granted this loan application as Plaintiff alleges, such action does not impose liability upon the Municipal Defendants; instead, the wrong, if actionable,

---

7. This Court has ruled similarly on other occasions. *See e.g. PRP, Inc. et al. v. The City of Norfolk and the Norfolk Redevelopment and Housing Authority,* (E.D.Va.1993) (Jackson, J.) ("The Court finds that the City did not have standing to file a motion for summary judgment on Count VI as it was not named in Court VI of the complaint. Accordingly, the City's motion for summary judgment is dismissed.").

would impose liability upon the federal government.

For these reasons, the Court **DISMISSES** Count V with prejudice for its failure to state a cause of action upon which relief may be granted.

#### 4. State Law Violations Alleged in Counts VI, VII, VIII

Plaintiff's Counts VI, VII, and VIII rely on this Court's pendant jurisdiction, and although the Court has dismissed the federal question counts, it exercises its discretion to examine these counts as well. Plaintiff alleges in these state law claims that the City and the NRHA have proceeded without requisite authority in acting upon the plan for the Center. Plaintiff urges that the Code of Virginia and the Virginia Constitution both proscribe the City's actions in financially supporting NRHA, as well as proscribing NRHA's role as both the owner and the landlord of this commercial enterprise. While Plaintiff's theories alleging the *ultra vires* and illegal nature of Municipal Defendants' actions are numerous and imaginative, each is without foundation.

The Virginia Code §§ 36-1 to 36-55 effectively codifies the Housing Act of 1938. Acts 1938, ch. 310. The provisions of title 36 incorporate the creation of what were originally termed "Housing Authorities" in each city or county, but which were later renamed "Redevelopment and Housing Authorities" by the Acts of 1946. Ch. 185; Va.Code § 36-4. The legislature thereby acknowledged the need for a political subdivision of the Commonwealth to work to alleviate community structural problems other than those simply related to housing. It declared in relevant part

> that there exist in many communities within this Commonwealth blighted areas ... which impair economic values and tax revenues, cause an increase in and spread of disease and crime, and constitute a menace to the health, safety, morals and welfare of the residents of the Commonwealth that the clearance, replanning, rehabilitation and reconstruction of such blighted areas and the sale or lease of land and the acquisition and operation of residential housing units for low, moderate and middle income persons within such areas for redevelopment in accordance with locally approved redevelopment plans are necessary for the public welfare and are public uses and public purposes for which public money may be spent and private property acquired by purchase or the power of eminent domain, and are governmental functions of grave concern to the Commonwealth....

Va.Code § 36-48.

The findings of the legislature did not stop at those declarations, however, and in Virginia Code § 36-49, the legislature added to the already listed powers granted to the Redevelopment and Housing Authorities the ability to undertake "redevelopment projects." Plaintiff fails to include these additional powers in the list of housing-oriented powers it concedes to NRHA. Nevertheless, the legislature in fact did grant NRHA powers beyond those it had enumerated in the areas of housing. In Virginia Code § 36-49 for example, it empowered Authorities, "in addition to other powers granted by this or any law, ... to carry out any work or undertaking (hereafter called a 'redevelopment project')." The legislature further expressly authorized the Authorities to effect these projects via varied means, including:

> 1. To acquire blighted to deteriorated areas, which are hereby defined as areas (including slum areas) with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement of design, ... or any combination of these or other factors, are detrimental to the safety, health, morals or welfare of the community;

> 2. To acquire other real property for the purpose of removing, preventing, or reducing blight, blighting factors or the cause of blight; ...

> 6. To make land so acquired available to private enterprise or public agencies (including sale, leasing, or retention by the authority itself) in accordance with the redevelopment plan;

> 7. To assist the reconstruction of project areas by making loans or grants of funds received from any public or private

source, for the purpose of facilitating the construction, reconstruction, rehabilitation or sale of housing or other improvements constructed or to be constructed on land situated within the boundaries of a redevelopment project; ...

9. To accomplish any combination of the foregoing to carry out a redevelopment plan.

Va.Code § 36–49.

These statutory authorizations are among those lawfully employed by NRHA in this case in efforts to successfully implement its Redevelopment Plan for the "Downtown Redevelopment Project—North." These authorized actions are attacked by Plaintiff primarily in Counts VI through VIII of its suit.

Plaintiff generally attacks the Center and its financing plan under the Virginia Constitution. However, as in *City of Charlottesville v. DeHaan*, 228 Va. 578, 323 S.E.2d 131 (1984), the Virginia Code expressly permits this type of action in furtherance of a redevelopment plan.

> Code § 36–7 authorizes cities to donate money to housing authorities and authorizes cities to raise such money by selling bonds. Code § 36–19(f1) authorizes housing authorities to make loans or grants for the prevention and elimination of slum or blighted areas. Among other things, Code § 36–19(f3) authorizes housing authorities to make loans for assistance in construction of commercial buildings.

*Id.* at 584, 323 S.E.2d 131. The language of the Code is clear and the Court **FINDS** that it permits the actions which Plaintiff alleges are impermissible under the Code. In sections 36–48 and 36–48.1 of the Virginia Code, "the legislature expressly stated that clearance, replanning, rehabilitation and reconstruction of blighted areas in accordance with locally approved redevelopment plans are

governmental functions of grave concern to the Commonwealth." *Reasor v. City of Norfolk*, 606 F.Supp. at 794 (citing Va.Code § 36–48). This Court has found that the Virginia legislature in fact "created housing and redevelopment authorities to accomplish the redevelopment." *Id.* (citing Va.Code §§ 36–49 through 36–51.1, 36–52.1 through 36–55).

### a. Count VI—Credit Clause—

■ The essential claim contained in Count VI rests on the Virginia Constitution, Art. X, § 10, which assures that the credit of the government of Virginia will not be granted in favor of any person or corporation.[8] Plaintiff alleges that Municipal Defendants violated this "credit clause" by pledging their credit to the benefit of private businesses such as Nordstrom. Plaintiff claims that their actions as alleged have and will prejudice it in its businesses.

Since NRHA has the authority to act under title 36 of the Virginia Code and the City has the authority under that section to provide NRHA with financial contributions,[9] it follows that the Plaintiff's only substantive claims lie under the Virginia Constitution.

The Virginia Supreme Court has examined the credit clause in very similar circumstances. In the *City of Charlottesville*, 228 Va. 578, 323 S.E.2d 131, the Plaintiff similarly challenged a redevelopment project much like the Center at issue here. That Plaintiff claimed that the proposed hotel-convention center and parking deck would harm his nearby hotel business. In that case, the City of Charlottesville also planned to finance a large portion of the project by providing bond monies to the Charlottesville Redevelopment and Housing Authority. *Id.* at 582, 323 S.E.2d 131. Both this type of financing scheme as well as the Virginia Code § 108

---

8. "Neither the credit of the Commonwealth nor of any county, city, town, or regional government shall be directly or indirectly, under any device or pretense whatsoever, granted to or in aid of any person, association, or corporation." VA. CONST. art. X, § 10.

9. [T]he [Virginia] legislature authorized the city to have the same rights and powers to cooperate and assist the authorities in redevelopment

that the city has under the Housing Law. Va. Code § 36–52, 36–6, 36–7, 36–7.1, 36.8. Thus, the City was empowered to do anything convenient to aid and cooperate in the planning, undertaking, construction or operation of a redevelopment project. Va.Code §§ 36–6(h), 36–52.
*Reasor v. City of Norfolk*, 606 F.Supp. 788, 795 (E.D.Va.1984).

loan guarantee applied for by Municipal Defendants in the case at bar were anticipated by the legislature and the authority provided for in the statutes. *See* Va.Code § 36–54. The Charlottesville Plaintiff also claimed that this scheme was an effort to lend the credit of the city to a private entity in violation of the credit clause of Art. X, § 10 of the Virginia Constitution. The Virginia Supreme Court found instead, that "[m]erely because the State incurs an indebtedness or expends its funds for its benefit and others may incidentally profit thereby does not bring the transaction within the letter or the spirit of the 'credit clause' prohibition." *Id.* at 586, 323 S.E.2d 131 (citing *Almond v. Day,* 197 Va. 782, 791, 91 S.E.2d 660 (1956)). The Court concluded that any benefit to the private developer was "incidental—not insignificant or inconsequential—but incidental. That is, it occurred as a result of the City's efforts to serve the City's interests." *Id.* (citing *Harrison v. Day,* 202 Va. 967, 972, 121 S.E.2d 615, 620 (1961)). In fact, it stated, "[w]e have long made clear that incidental benefits to private entities do not make unconstitutional efforts by governmental entities to serve the needs of government." *Id.* at 586, 323 S.E.2d 131; *see also Reasor,* 606 F.Supp. at 797–98.

Plaintiff contends that *City of Charlottesville* can be distinguished from the case at bar because the Virginia Supreme Court found that "[i]n no place does either the City or the Authority guarantee the loan from the bank to the development and nowhere does the bank require such a guarantee. . . ." 228 Va. at 589, 323 S.E.2d 131. Plaintiff alleges that the City is placing its credit directly in issue via the Virginia Code § 108 loan guarantee and asserts that since the City will be liable for the loan repayment and it collateralized its other funds from HUD against this loan in consideration for the Loan Guarantee, it has violated the credit clause by jeopardizing monies it claims "belong to the citizens of the City of Norfolk." (P.'s Consolidated Brief in Opp. at 27.)

This Court has found that the credit clause, contrary to Plaintiff's view, "only applies to 'credit' in the popular sense of the term" and therefore only applies where actu-

al credit is loaned. *Reasor,* 606 F.Supp. at 795. Here, no "credit" has been extended to third parties, as the term "credit" refers to the relation of borrower and lender in which money is borrowed to be repaid at a later date with interest." *Id.* at 797 (citing *Almond v. Day,* 197 Va. 782, 91 S.E.2d 660 (1956)). Plaintiff does not allege such a loan between the City or NRHA and Nordstrom or the developer, and hence, no violation of the clause can have occurred.

Finally, Plaintiff submits that despite case law to the contrary, a determination of Municipal Defendants' "animating purpose" behind the Redevelopment Plan is not possible from the face of these pleadings. It alleges the purpose to be instead "a desire to assist and aid a private party" (P.'s Consolidated Brief in Opp. at 28). As the Court previously observed, such a frivolous allegation does not create a justiciable issue. Contrary to this position, the Court **FINDS** that the Redevelopment Plan, in conjunction with case law such as *City of Charlottesville,* clearly demonstrate that the purpose behind the Center is a legitimate public one. *See also Reasor,* 606 F.Supp. at 795 (holding that the relevant statutes require the City to be involved in redevelopment projects: "The Court FINDS that the legislature has clearly articulated and affirmatively expressed its intent that the City engage in redevelopment and conservation activities.") This governmental "public" purpose removes the City from the ambit of the credit clause, as stated by the General Assembly in title 36. The legislative finding that the Center will serve a legitimate public function in combating blight is not susceptible to judicial redetermination under Virginia law. *City of Charlottesville,* 228 Va. at 583, 323 S.E.2d at 133 (citing *Harrison v. Day,* 200 Va. 750, 754, 107 S.E.2d 585, 587–88 (1959); *Ex parte Settle,* 114 Va. 715, 719, 77 S.E. 496, 497 (1913)). The mere fact that the bonds which are to be issued will finance a center leased to private entities does not make these actions unconstitutional. *See Fairfax Co. Industrial Development Authority v. Coyner,* 207 Va. 351, 357, 150 S.E.2d 87 (1966). The public purpose and character of the Center at issue here is not destroyed due to incidental benefits which will accrue, and as Plaintiff has not

successfully claimed that the public purpose bears no reasonable relation to the public interest or welfare, the Court must not interfere.[10]

Since Defendant City in this case is similarly aligned with the City of Charlottesville in the Virginia Supreme Court opinion of 1984, the Court **FINDS** that the City's efforts to serve the public purpose of eliminating the blight and slum conditions of the City by building the Center similarly do not violate the "credit clause" of the Virginia Constitution.[11] Therefore, the Court GRANTS Municipal Defendants' motions to dismiss Count VI.

### b. Count VII—Internal Improvements Clause—

■■■ Plaintiff also contends that the "internal improvements clause" of the Virginia Constitution prohibits the Municipal Defendants' actions relating to the Center. That clause essentially prohibits the Commonwealth from becoming interested in any work of internal improvement, save public roads or parks.[12] Plaintiff claims that the Municipal Defendants will be "so inextricably intertwined with the internal improvements and private enterprises of Nordstrom and related private entities at the Center that the 'internal improvements clause' is violated." (P.'s Consolidated Brief in Opp. at 29–30.) The additional claim that NRHA lacks the authority to act as a commercial landlord has previously been discussed.

Addressing these claims individually, the Court notes that it has previously found that

when the "legislature created housing and redevelopment authorities to accomplish the redevelopment . . . [it] also contemplated that the cities would be inexorably tied into the redevelopment." *Reasor*, 606 F.Supp. at 794 (citations omitted). Thus, Plaintiff's argument that this selfsame intertwining would produce a violation of the internal improvements clause is without merit.

The next argument contained in this count fails for a variety of reasons. The internal improvements clause, unlike the commerce clause, specifically applies to the Commonwealth itself, not to other units of government. Thus, neither the City nor the NRHA should be implicated under the clause. Further, Municipal Defendants argue that an "internal improvement" is defined in Virginia Codes and jurisprudence as "channels of trade and commerce, such as turnpikes, canals, railroads, telegraph lines, including in more recent years, telephone lines, and other works of a like *quasi*-public character," *Harrison v. Day*, 200 Va. 764, 771, 107 S.E.2d 594 (1959) (quoting *Shenandoah Lime Co. v. Mann*, 115 Va. 865, 871–72, 80 S.E. 753 (1913)), none of which is implicated here. The Virginia Supreme Court has also specifically held that a retail market is not an internal improvement under that Article. *See Harrison v. Day*, 200 Va. at 755, 107 S.E.2d 585. That Court also noted that "you may have an 'internal improvement', according to the literal meaning of the term, which

---

10. This result should come as no surprise to Plaintiff, as the Virginia Supreme Court has long maintained this position. In *Harrison v. Day*, 200 Va. 750, 107 S.E.2d 585 (1959), the Court clearly articulated this stance. It quoted with approval *Almond v. Day*, 197 Va. at 791, 91 S.E.2d 660, stating,

[w]hen the underlying and activating purpose of the transaction and the financial obligation incurred are for the State's benefit, there is no lending of its credit though it may have expended its funds or incurred an obligation that benefits another. Merely because the State incurs an indebtedness or expends its funds for its benefit and others may incidentally profit thereby does not bring the transaction within the letter or the spirit of the 'credit clause' prohibition.

*Id.* at 753, 107 S.E.2d 585.

11. Having held that authorities created for the purpose of acquisition and development and operation of [facilities and markets] for public use were for a public purpose and a proper governmental function, it would indeed be an anomaly for us to say that an authority created for the purpose of stimulating and promoting industrial development, which would contribute to the economy of the State and create jobs for its people, was not for a public purpose and thus not a proper function of government. *Fairfax Co. Industrial Development Authority v. Coyner*, 207 Va. 351, 358, 150 S.E.2d 87 (1966).

12. "[N]or shall the Commonwealth become a party to or become interested in any work of internal improvement, except public roads and public parks or engage in carrying on any such work . . ." VA. CONST. art. X, § 10.

does not fall within the constitutional prohibition." *Id.*

■ The existence of a "governmental functions" exception to the internal improvements clause eliminates any residual doubt as to whether the Municipal Defendants have violated the clause. *See Harrison v. Day,* 200 Va. at 754–56, 107 S.E.2d 585; *Fairfax Co. Industrial Development Authority v. Coyner,* 207 Va. at 359–60, 150 S.E.2d 87. This exception applies to internal improvements "which are incidental and necessary to the performance of its governmental functions." *Harrison v. Day,* 200 Va. at 755, 107 S.E.2d 585; *see also Harrison v. Day* 200 Va. 764, 772, 107 S.E.2d 594, 599 (1959). As the Center is an integral part of the Municipal Defendants' Redevelopment Plan to revitalize and eliminate the slum area of downtown Norfolk, and as both the City and the NRHA are expressly authorized to pursue these types of redevelopment projects according to title 36 of the Virginia Code, the Court **FINDS** that the Municipal Defendants are not violating the internal improvements clause. Also the governmental functions exception insulates the actions complained of by Plaintiff from suspicion under the Virginia Constitution, and for these reasons the Court **GRANTS** Municipal Defendants' Motion to Dismiss Count VII.

### c. Count VIII—General Laws of Virginia—

■ Finally, Plaintiff alleges that certain of the Municipal Defendants' actions violate "the laws of the Commonwealth of Virginia" by using individual's tax money for private purposes. (Compl. at ¶ 186.) Plaintiff has also failed to plead a claim in this Count. Although Plaintiff maintains that only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required of it, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 167–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), its blanket allegation fails to specify any law violated or which actions allegedly constituted such vio-

lations. Such a broad-based and vague allegation is not sufficient.

■ If the Court interprets this count as stating a takings argument, that claim fails as well. Where a legitimate public purpose is recognized by the Court,[13] the repercussions of which Plaintiff complains are merely incidental. In redevelopment cases where a loss of customers occurs to businesses, a taking in the constitutional sense has not occurred, even if land value is also decreased. *See e.g., Woodland Market Realty Co. v. City of Cleveland,* 426 F.2d 955, 958 (6th Cir.1970).

> Actions done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use or value, do not amount to a taking of such property within the meaning of the constitutional provision that private property shall not be taken for public use without just compensation.

*Id.*

Furthermore, Plaintiff's complaint regarding the funding mechanism for the Center is also unfounded as such funding is consistent with the laws of Virginia, Va.Code § 36–7. Further, it has been found that the tax money collected will be employed for a lawful, public purpose. Accordingly, the Court **GRANTS** Municipal Defendant's Motion to Dismiss Count VIII for failure to state a claim upon which relief may be granted.

### 5. Count IX—Dillon Rule—

■ Plaintiff's final count, Count IX, essentially alleges that NRHA's actions pertaining to the logistics of the Center Project specifically violate the so-called "Dillon Rule". Virginia's Dillon Rule "provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *City of Richmond v. Confrere Club of Richmond, Virginia, Inc.,* 239 Va. 77, 79, 387 S.E.2d 471 (1990).

---

**13.** The Court reiterates that the Virginia Code authorizes redevelopment projects even when they entail "making property available for redevelopment by private enterprise" for that "is merely incidental to such main purpose" of eliminating blighted or slum areas. *Hunter v. Norfolk Redevelopment and Housing Authority,* 195 Va. 326, 336, 78 S.E.2d 893 (1953) (citing Va.Code § 36–53).

Plaintiff summarizes its position with regard to the NRHA by describing that

a careful review of Count Nine reflects that plaintiff, citing Virginia law, challenges the authority of defendant Authority to undertake a landlord function in connection with a commercial retail establishment such as MacArthur Center and Nordstrom; no other activity of Authority is asserted under Count Nine as being *ultra vires.*

(P.'s Brief in Opposition at 19–20.) A careful review of the Virginia Code, however, reflects that NRHA has in fact clearly been granted the explicit power to act as a landlord in connection with a commercial retail establishment such as the Center. Section 36–49 of the Virginia Code on its face grants Housing and Redevelopment Authorities the specific powers to do what Plaintiff insists it cannot do, that is, to "make land ... acquired available to *private enterprise* or public agencies (including sale, *leasing,* or retention by the authority itself) in accordance with the redevelopment plan". Va.Code § 36–49 (emphasis added).

The Virginia Supreme Court has noted that in cases such as this one, "[w]hen legislative intent is plain, we must respect it and give it effect." *City of Richmond,* 239 Va. at 80, 387 S.E.2d 471. Accordingly, the Court **FINDS** that NRHA has not acted *ultra vires* in planning to lease the Center to private enterprise while maintaining ownership of the property. Therefore, the Court **GRANTS** Municipal Defendants' Motion to Dismiss Count IX for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

The issues raised by Plaintiff pertain to legislative, not judicial, authority, and are solely within the realm of legislative decision making. The law does not provide for judicial review of the chances for success of the Center, or of the wisdom and fairness behind any decisions made by Municipal Defendants. Instead, the parameters of this Court's jurisdiction, and hence of this decision, extend to whether Plaintiff has stated a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) in any of its nine counts.

The Court **FINDS** that Plaintiff has failed this test with regard to Counts I, II, III, V, VI, VII, VIII, and IX, and therefore, it **GRANTS** Municipal Defendants' motions to dismiss these Counts with prejudice. With regard to Count IV, the Court **DISMISSES** that claim as well, but without prejudice to Plaintiff if it should choose to restate the allegations in a new complaint.

It is so **ORDERED.**